1

**HAYES PAWLENKO LLP**
Matthew B. Hayes (SBN 220639)

2

Kye D. Pawlenko (SBN 221475)
mhayes@helpcounsel.com

3

kpawlenko@helpcounsel.com
1414 Fair Oaks Avenue, Suite 2B

4

South Pasadena, CA 91030
Tel: (626) 808-4357

5

Fax: (626) 921-4932

6

7

Attorneys for Plaintiff
PAUL HUTCHINS

8

9

### UNITED STATES DISTRICT COURT

10

### NORTHERN DISTRICT OF CALIFORNIA

11

### SAN JOSE DIVISION

12

PAUL HUTCHINS, as a representative
of a class of participants and

13

beneficiaries of the HP Inc. 401(k) Plan,

14

Plaintiff,

15

v.

16

HP INC.; HP INC. PLAN COMMITTEE;

17

and DOES 1 to 10 inclusive,

18

Defendants.

19

Case No. 5:23-CV-05875-BLF

**PLAINTIFF'S *AMENDED*
MEMORANDUM OF POINTS &
AUTHORITIES IN OPPOSITION TO
DEFENDANTS' MOTION TO
DISMISS**

Date:  May 9, 2024
Time:  9:00 a.m.
Judge:  Hon. Beth L. Freeman

20

21

22

23

24

25

26

27

28

---

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

# TABLE OF CONTENTS

INTRODUCTION ... 1

REQUEST FOR JUDICIAL NOTICE OF PUBLIC RECORDS ... 1

STATEMENT OF FACTS ... 2

STATEMENT OF ISSUES TO BE DECIDED ... 3

ARGUMENT ... 4

I.   IRS Regulation § 1.407-7(a) Does Not Apply to the HP Plan. ... 4

II.   The *Proposed* IRS Regulation Is Likewise of No Consequence. ... 7

III.   Plaintiff Has Stated a Claim for Breach of Fiduciary Duties. ... 8

    A.   Defendants Were Acting as Fiduciaries When They Decided How to Apply Forfeitures While Administering the Plan. ... 8

        1.   Plaintiff Does Not Challenge Any Settlor Decisions. ... 9

        2.   Defendants Managed and/or Disposed of Plan Assets. ... 11

        3.   Defendants Had Discretion Over Plan Administration. ... 13

    B.   Plaintiff Has Alleged That Defendants Breached Their Fiduciary Duties. ... 14

        1.   Compliance With Existing and Proposed IRS Regulations Is Not a Defense to ERISA Claims. ... 14

        2.   Defendants Cannot Hide Behind the Terms of The Plan. ... 15

        3.   Defendants Mischaracterize the Allegations. ... 17

IV.   Plaintiff States a Claim for Unlawful Inurement. ... 18

    A.   Plan Assets Cannot Forgive Employer Debts. ... 19

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

B.     Forfeitures Were Used to Forgive HP's Debts to the Plan.     21

V.     <u>Plaintiff States a Claim for Prohibited Transactions.</u>     22

A.     Plaintiff Alleges a Transaction That Plausibly Violates § 1106(a).     22

B.     Plaintiff Alleges Self-Dealing That Plausibly Violates § 1106(b)(1).     24

VI.     <u>Plaintiff Alleges a Plausible Breach of the Duty to Monitor.</u>     25

CONCLUSION     25

ii

# TABLE OF AUTHORITIES

**Cases**

*Acosta v. Pac. Enterprises,*
    950 F.2d 611 (9th Cir. 1992)    25

*Akers v. Palmer,*
    71 F.3d 226 (6th Cir. 1995)    11

*Asner v. SAG-AFTRA Health Fund,*
    557 F. Supp. 3d 1018 (C.D. Cal. 2021)    10

*Bafford v. Northrop Grumman Corp.,*
    994 F.3d 1020 (9th Cir. 2021)    8

*Barker v. Am. Mobil Power Corp.,*
    64 F.3d 1397 (9th Cir. 1995)    14, 18, 22

*Bd. of Trs. v. Grand River Navigation Co., Inc.,*
    2021 WL 1215060 (D. Md. Mar. 30, 2021)    20

*Blatt v. Marshall & Lassman,*
    812 F.2d 810 (2d Cir. 1987)    12

*Briscoe v. Fine,*
    444 F.3d 478 (6th Cir. 2006)    12

*Brown v. Health Care & Ret. Corp. of Am.,*
    25 F.3d 90 (2d Cir. 1994)    20

*Carriers Container Council, Inc. v. Mobile S.S. Ass'n Inc.,*
    896 F.2d 1330 (11th Cir. 1990)    22

*Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.,*
    472 U.S. 559 (1985)    15, 23

*Chao v. Anderson,*
    2007 WL 1448705 (E.D. Va. May 9, 2007)    20, 22

*Chao v. Malkani,*
    452 F.3d 290 (4th Cir. 2006)    20

*Cline v. Indus. Maint. Eng'g & Cont. Co.,*
    200 F.3d 1223 (9th Cir. 2000)    8-9

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

*Commissioner v. Keystone Consolidated Industries, Inc.*,
    508 U.S. 152 (1993)                   23

*Coulter v. Morgan Stanley & Co. Inc.*,
    753 F.3d 361 (2d Cir. 2014)          9, 10

*David P. Coldesina, D.D.S. v. Est. of Simper*,
    407 F.3d 1126 (10th Cir. 2005)       12

*Doe v. United Behavioral Health*,
    523 F. Supp. 3d 1119 (N.D. Cal. 2021)   12, 16

*Edmonson v. Lincoln Nat. Life Ins. Co.*,
    725 F.3d 406 (3d Cir. 2013)         13

*Esden v. Bank of Bos.*,
    229 F.3d 154 (2d Cir. 2000)         15

*Estate of Howard v. Comm'r*,
    910 F.2d 633 (9th Cir. 1990)        7

*Feinberg v. T. Rowe Price Grp., Inc.*,
    2021 WL 488631 (D. Md. Feb. 10, 2021)   17

*Fifth Third Bancorp v. Dudenhoeffer*,
    573 U.S. 409 (2014)          14, 15, 16

*Finnerty v. Stiefel Lab'ys, Inc.*,
    756 F.3d 13010 (11th Cir. 2014)     5

*Glazing Health & Welfare Fund v. Lamek*,
    896 F.3d 908 (9th Cir. 2018)         10

*Guidry v. Sheet Metal Workers Nat. Pension Fund*,
    493 U.S. 365 (1990)            8

*Holland v. Arch Coal, Inc.*,
    947 F.3d 812 (D.C. Cir. 2020)        19

*Holliday v. Xerox Corp.*,
    732 F.2d 548 (6th Cir. 1984)         21

*Hughes Aircraft Co. v. Jacobson*,
    525 U.S. 432 (1999)           4, 9, 21

iv

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

*In re McIntyre,*
    222 F.3d 655 (9th Cir. 2000)      8

*Int'l Bhd. of Painters & Allied Trades Union and Indus. Pension Fund v. Duval,* 925
    F. Supp. 815 (D.D.C. 1996)      24

*IT Corp. v. Gen. Am. Life Ins. Co.,*
    107 F.3d 1415 (9th Cir. 1997)      11-12, 13

*Izarelli v. Rexene prd. Co.,*
    24 F.3d 1506 (5th Cir. 1994)      5

*Operating Eng'rs Loc. 324 Health Care Plan v. Dalessandro Cont. Grp., LLC,*
    2012 WL 831758 (E.D. Mich. Mar. 12, 2012)      120

*McDaniel v. Chevron Corp.,*
    203 F.3d 1099 (9th Cir. 2000)      14

*Plastic Surgery Ctr., P.A., v. Aetna Life Ins. Co.,*
    967 F.3d 218 (3d Cir. 2020)      2

*Reklau v. Merchants Nat. Corp.,*
    808 F.2d 628 (7th Cir. 1986)      15

*Skilstat, Inc. v. CVS Caremark Corp.,*
    669 F.3d 1005 (9th Cir. 2012)      1

*Solis v. Webb,*
    931 F. Supp. 2d 936 (N.D. Cal. 2012)      25

*Spink v. Lockheed Corp.,*
    125 F.3d 1257 (9th Cir. 1997)      21

*Srein v. Frankford Tr. Co.,*
    323 F.3d 214 (3d Cir. 2003)      12

*Tedori v. United States,*
    211 F.3d 488 (9th Cir. 2000)      7

*Thole v. U.S. Bank N.A.,*
    140 S. Ct. 1615 (2020)      4-5

*Thondukolam v. Corteva, Inc,*
    2020 WL 1984303 (N.D. Cal. Apr. 27, 2020)      11

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS' MOTION TO DISMISS**

*Tobias v. NVIDIA Corp.*,
    2021 WL 4148706 (N.D. Cal. Sept. 13, 2021)          1

*Tr. Of S. Cal. Bakery Drivers Security Fund v. Middleton*,
    474 F.3d 642 (9th Cir. 2007)          9, 12

*United Food & Com. Workers Int'l Union-Indus. Pension Fund v.
Bank of N.Y. Mellon*,
    2014 WL 4627904 (N.D. Ill. Sept. 16, 2014)          24

*Varity Corp. v. Howe*,
    516 U.S. 489 (1996)          13

*Waller v. Blue Cross of Cal.*,
    32 F.3d 1337 (9th Cir. 1994)          10

*Wright v. Oregon Metallurgical Corp.*,
    360 F.3d 1090 (9th Cir. 2004)          16

**Statutes**

26 U.S.C. § 401          5, 6 14

26 U.S.C. § 412          6

26 U.S.C. § 414          6

26 U.S.C. § 430          6

26 U.S.C. § 431          6

26 U.S.C. § 433          6

26 U.S.C. § 4975          23

29 U.S.C. § 1002          9, 11, 13, 23

29 U.S.C. § 1103          19, 20, 22

29 U.S.C. § 1104          3, 14, 15, 18

29 U.S.C. § 1106          22, 23, 24

29 U.S.C. § 1144          7

PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

**Regulations**

29 C.F.R. § 2509.75-8                                              25

26 C.F.R. § 1.401-0                                                7

26 C.F.R. § 1.401-1                                                6

26 C.F.R. § 1.401-7                                                4, 5, 6, 14

**Other Authorities**

28 Fed. Reg. 10115 (1963)                                         5

42 Fed. Reg. 42320 (1977)                                         7

88 Fed. Reg. 12282 (2023)                                         6, 7, 14

Pub. L. No. 87-792, 76 Stat. 809 (1962)                           5

Pub. L. No. 93-406, 88 Stat. 829 (1974)                           6

Pub. L. No. 99-514, 100 Stat. 2085 (1986)                         6

Rev. Rul. 71-313, 1971 WL 26693 (1971)                            6

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

## INTRODUCTION

The Employee Retirement Income Security Act ("ERISA") requires fiduciaries to act in the best interests of plan participants, proscribes self-dealing and other "prohibited transactions" and prevents the plan's assets from inuring to the benefit of an employer.  At issue in this case is whether these statutory commands are violated when, following a participant's break in service, an employer-fiduciary reallocates the unvested portion of the participant's account (called "forfeitures") to offset its own contributions instead of to defray plan expenses borne by participants.

Defendants HP Inc. and the HP Inc. Plan Committee (together "Defendants") do *not* dispute that (1) forfeitures are "plan assets," (2) the plan allowed forfeitures to be used to defray the administrative expenses charged to participant accounts, (3) Defendants declined to use any forfeitures for such purposes and instead chose to use these plan assets to offset HP Inc.'s own contribution debt to the plan, and (4) the plan and its participants were harmed by this self-serving decision.  For the reasons explained herein, ERISA forbids an employer-fiduciary from using plan assets in this manner.  Accordingly, the motion to dismiss should be denied.

## REQUEST FOR JUDICIAL NOTICE OF PUBLIC RECORDS

In connection with this Opposition, Plaintiff Paul Hutchins ("Plaintiff") requests that the Court take judicial notice of several matters of public record.  This includes excerpts from the HP Inc. 401(k) Plan's Form 5500 filings with the Department of Labor for plan years 2018 through 2022 (Exhibits 1 through 5), as well as a brief filed by the Department of Labor in other litigation (Exhibit 6).

These filings are subject to judicial notice because they are readily verifiable through the Department of Labor's website (www.efast.dol.gov/5500search) or the Public Access to Court Electronic Records (PACER) online service.  *See Skilstat, Inc. v. CVS Caremark Corp.,* 669 F.3d 1005, 1016 (9th Cir. 2012) ("[C]ourt may take judicial notice of matters of public record.") (internal quotation marks omitted); *see also Tobias v. NVIDIA Corp.*, 2021 WL 4148706, at *5 (N.D. Cal. Sept. 13, 2021)

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

("Courts within this district routinely grant requests for judicial notice of" Forms 5500 filed with the Department of Labor) (collecting cases); *Plastic Surgery Ctr., P.A., v. Aetna Life Ins. Co.,* 967 F.3d 218, 237 (3d Cir. 2020) (holding that "Brief for the Secretary of Labor" in other action "is properly the subject of judicial notice").

## STATEMENT OF FACTS

Plaintiff is a participant in the HP Inc. 401(k) Plan ("Plan" or "HP Plan"). Compl. ¶ 1. The Plan is a defined contribution plan sponsored by defendant HP Inc. ("HP" or "the Company"). Compl. ¶¶ 4, 6; Motion to Dismiss ("MTD") p. 3. It is intended to be a tax-qualified "stock bonus plan." *See* HP Inc. 401(k) Plan Document ("Plan Doc.") § 1 (p. 2) (filed by Defendants at Dkt. No. 25-1 (Exh. A)).

In addition to being the Plan sponsor, HP also serves as the Plan administrator through a "Committee of the Company." Compl. ¶ 6; Plan Doc. §§ 16(a), 21(pp); Exhs. 1-5 (Form 5500s at 3a (confirming that the "Plan administrator" is same as the "Plan Sponsor")). To that end, the HP Inc. Plan Committee ("Committee") is charged with operating and administering the Plan. Compl. ¶ 7; Plan Doc. §§ 16(a), 21(pp). It is a named fiduciary of the Plan. Plan Doc. § 16(a).

Each year, the Plan requires HP to make "Matching Contributions" to the Plan equal to 100% of the first 4% of a participant's compensation contributed to the Plan. Compl. ¶ 15; Plan Doc. § 5(d). Unless an exception applies, participants do not become fully vested in the "Matching Contributions" until they have completed three years of service. Compl. ¶ 18; Plan Doc. § 11(c).

Participants who separate from service before these contributions have fully vested forfeit their right to the unvested portion of the contributions. Compl. ¶ 21; Plan Doc. § 11(f). The Plan document provides that the "[a]mounts forfeited . . . may be used to reduce employer contributions, to restore benefits previously forfeited, to pay Plan expenses, or for any other permitted use." Compl. ¶ 22; Plan Doc. § 11(h).

The expenses incurred for administering the HP Plan are paid with Plan assets "pursuant to directions of the Company." Compl. ¶¶ 19-20; Plan Doc. § 17(b).

Absent these expenses being covered by other assets in the Plan, the participant accounts are each charged with an allocation of the Plan expenses. Compl. ¶¶ 19-20; Plan Doc. § 17(b). The deduction of these expenses from participant accounts reduces the funds available to participants for distribution and/or investing. Compl. ¶ 20.

Although ERISA expressly requires fiduciaries to "defray[] reasonable expenses of administering the plan[,]" 29 U.S.C. § 1104(a)(1)(A)(ii), and although the Plan expressly permits forfeitures to be used to cover Plan expenses, Defendants consistently declined to use any forfeitures for such purposes. Compl. ¶¶ 22-23. Instead, Defendants have chosen to use all forfeitures in the Plan to offset HP's "Matching Contributions" debt to the Plan. Compl. ¶¶ 24-29; Exhs. 1-5 (Form 5500s for 2018 through 2022 at Note 1 to Financial Statements (specifying that "[f]orfeitures" are "used to reduce" the "annual Company matching contributions.").

While this benefitted HP by lowering its contribution expenses, it harmed the Plan by (1) decreasing the amount of contributions the Plan otherwise would have received and (2) depriving the Plan of the money the individual accounts would have earned had the expenses not been deducted from the accounts. Compl. ¶ 30.

| YEAR | CONTRIBUTIONS REDUCED BY FORFEITURES | EXPENSES DEFRAYED BY FORFEITURES | EXPENSES CHARGED TO PARTICIPANTS |
|------|--------------------------------------|----------------------------------|----------------------------------|
| 2019 | $8,300,000 | $0 | $2,371,000 |
| 2020 | $4,700,000 | $0 | $1,631,000 |
| 2021 | $4,400,000 | $0 | $2,113,000 |
| 2022 | $1,600,000 | $0 | $2,434,000 |
| 2023 | $1,000,000 | $0 | $2,851,000 |

*See* Compl. ¶¶ 25-29.

## STATEMENT OF ISSUES TO BE DECIDED

(1)     Whether an IRS regulation that is expressly limited to defined *benefit* plans, and that was rendered defunct following the passage of ERISA, bars Plaintiff's claims concerning a defined *contribution* plan.

3

(2)     Whether Defendants were acting as fiduciaries when deciding how to allocate forfeited assets in the Plan or instead were acting as the Plan settlors.

(3)     Whether Defendants' application of forfeitures to reduce HP's own contributions rather than defray the Plan's expenses states a plausible breach of fiduciary duties.

(4)     Whether Defendants' application of forfeitures to forgive HP's own debt obligations to the Plan states a plausible violation of ERISA's anti-inurement rule.

(5)     Whether the exchange of forfeitures in the Plan for HP's contributions to the Plan states a plausible transaction prohibited by ERISA.

(6)     Whether Defendants' application of forfeitures in the Plan to reduce HP's own contributions states a plausible self-dealing claim prohibited by ERISA.

(7)     Whether HP's failure to prevent the Committee's misuse of forfeitures states a plausible breach of HP's duty to monitor the Committee.

## ARGUMENT

### I.     IRS Regulation § 1.401-7(a) Does Not Apply to the HP Plan.

Defendants assert that "Plaintiff's claims are foreclosed by" a "controlling regulation" of the Treasury Department that "requires" forfeitures to "*be used* as soon as possible to *reduce the employer's contributions* under the plan." MTD pp. 1, 5-6 (emphasis in original). But the IRS regulation on which Defendants rely – 26 C.F.R. § 1.401-7(a) – has *never* applied to the plan at issue here and, as the Treasury Department acknowledged, was rendered defunct following the passage of ERISA.

To understand why the IRS regulation upon which Defendants' motion is based has *never* required forfeitures in the HP Plan to be used to reduce employer contributions, "it is essential to recognize the difference between defined contribution plans and defined benefit plans." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 439 (1999). "In a defined-benefit plan, retirees receive a fixed payment each month, and the payments do not fluctuate with the value of the plan or because of the plan fiduciaries' good or bad investment decisions." *Thole v. U.S. Bank N.A.,* 140 S. Ct.

4

1615, 1618 (2020).   By contrast, in a "defined contribution plan," the "employer's contribution is fixed and," at retirement, "the employee receives whatever level of benefits the amount contributed on his behalf will provide."   *Hughes*, 525 U.S. at 439.

The HP Plan is a "stock bonus plan," which is a type of "defined contribution plan."   *See* Plan Doc. § 1 (p. 2); MTD p. 3; *see also, e.g., Finnerty v. Stiefel Lab'ys, Inc.,* 756 F.3d 13010, 1323 (11th Cir. 2014) ("stock bonus plans are considered defined contribution" plans); *Izarelli v. Rexene prd. Co.,* 24 F.3d 1506, 1509 (5th Cir. 1994) (recognizing that a "Stock Bonus Plan" is a "defined contribution, or individual account, plan").   The regulation Defendants rely upon – 26 C.F.R. § 1.401-7(a) – and the Code provision it construes – 26 U.S.C. § 401(a)(8) – have never applied to stock bonus defined contribution plans.

Section 401(a) of the Internal Revenue Code sets forth the requirements for a "stock bonus, pension, *or* profit-sharing plan" to be a tax exempt "qualified trust."   26 U.S.C. § 401(a)(8) (emphasis added).   When initially enacted in 1954, section 401(a) did not address the use of forfeitures in any of these three types of plans.   In 1962, the statute was amended to add subdivision (a)(8).   *See* Pub. L. No. 87-792, 76 Stat. 809, 810 (1962).   The new provision provided that "[a] trust forming part of a *pension plan* shall not constitute a qualified trust under this section unless the plan provides that forfeitures must not be applied to increase the benefits any employee would otherwise receive under the plan."   26 U.S.C. § 401(a)(8) (1962) (emphasis added).   The statute remained silent – and to this day is still silent – regarding the use of forfeitures in "stock bonus" and "profit sharing" plans.

In 1963, the IRS promulgated 26 C.F.R. § 1.401-7 to construe the 1962 amendment adding subdivision (a)(8) to Code section 401.   *See* 28 Fed. Reg. 10115 (1963).   As with the statutory provision it construes, that regulation does not purport to apply to either a "stock bonus" or "profit sharing" plan.   Instead, it is expressly limited to a "pension plan."   *See* 26 C.F.R. § 1.401-7(a).   The IRS regulations state that "[a] *pension plan* within the meaning of section 401(a)" – and as used in

PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS

1    regulation "§ 1.401-7" – is a plan that provides for "the payment of *definitely*

2    *determinable benefits*" (i.e., a defined benefit plan).   26 C.F.R. § 1.401-1(b)(1)(i)

3    (emphasis added).  In contrast, both a "stock bonus plan" and a "profit-sharing plan"

4    are plans that provides for "a definite predetermined formula for allocating the

5    *contributions* to the plan" (i.e., defined contribution plans).   26 C.F.R. § 1.401-

6    1(b)(1)(ii) & (iii) (emphasis added).  It has always been clear that the requirements of

7    "[s]ection 401(a)(8) of the Code and section 1.401-7 of the Income Tax Regulations" do

8    "*not* extend to profit-sharing and stock bonus plans."   Rev. Rul. 71-313, 1971 WL

9    26693 (1971) (emphasis added).

10        In addition, with the passage of ERISA, the Code was amended to include a

11   definition of "defined contribution plan" that expressly contemplates that "forfeitures

12   of accounts of other participants … may be allocated to such participant's account."

13   Pub. L. No. 93-406, 88 Stat. 829 at § 1015 (1974); 26 U.S.C. § 414(i).  This provision

14   would be irreconcilable with section 401(a)(8)'s ban on reallocating forfeitures to

15   other participants' accounts if that provision applied to a "defined contribution plan."

16   Confirming that section 401(a)(8) has no application to defined contribution plans,

17   the statute was amended in 1986 to replace the term "pension plan" with the term

18   "defined benefit plan."   *See* Pub. L. No. 99-514, 100 Stat. 2085 at § 1119(a) (1986).

19        Not only is the regulation cited by Defendants inapplicable to defined

20   contribution plans, but its requirement that "forfeitures" in a "pension plan … must

21   be used … to reduce employer contributions" was also rendered defunct by the

22   passage of ERISA.  This is because "ERISA added section 412 to the Code, which

23   requires qualified defined benefit plans … to satisfy a minimum funding standard"

24   and the Code "provisions that set forth minimum funding requirements" – 26 U.S.C.

25   §§ 412, 430 431, and 433 – "do *not* allow the use of forfeitures to reduce required

26   employer contributions to a defined benefit plan."  88 Fed. Reg. 12282, 12284 (2023)

27   (emphasis added).  For that reason, the IRS clarified that § 1.401-7(a), among other

28

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1    regulations, "reflect the provisions of" the Code "*prior to* amendment by" ERISA.  26
2    C.F.R. § 1.401-0 (emphasis added); 42 Fed. Reg. 42320 (1977).

3    **II.      The *Proposed* IRS Regulation Is Likewise of No Consequence.**

4          To be sure, last year the IRS published a *proposed* regulation that, if
5    promulgated, would for the first time regulate the use of forfeitures in defined
6    contribution plans for the purpose of determining whether a plan is tax qualified.
7    *See* 88 Fed. Reg. 12282 (2023).  It would permit a defined contribution plan to remain
8    qualified for favorable tax treatment where "forfeitures are used for one or more of
9    the following purposes: (i) To pay plan administrative expenses; (ii) To reduce
10   employer contributions under the plan; or (iii) To increase benefits in other
11   participants' accounts in accordance with plan terms."  88 Fed. Reg. 12282, 12285
12   (2023).  This *proposed* regulation is of no consequence here for multiple reasons.

13         First, a *proposed* regulation could not impact the construction of ERISA
14   pursuant to 29 U.S.C. § 1144(d) – providing that ERISA shall not be "construed to
15   alter, amend, modify, invalidate, impair or supersede . . . any rule or regulation" –
16   because it is not a "rule or regulation."  *See Tedori v. United States*, 211 F.3d 488, 492
17   (9th Cir. 2000) ("[P]roposed regulations carry no more weight than a position
18   advanced on brief"); *Estate of Howard v. Comm'r*, 910 F.2d 633, 636 (9th Cir. 1990)
19   ("Proposed regulations do not have the force of law").

20         Second, even if the proposed regulation were to eventually become a "rule or
21   regulation," it would only apply to plan years beginning on or after January 1, 2024.
22   *See* 88 Fed. Reg. 12282, at 12285.  Thus, it would have no application here because
23   Plaintiff challenges the use of forfeitures in years 2019 to 2023.  *See* Compl. ¶¶ 25-29.

24         Third, even if the proposed regulation were applicable here, it would *not*
25   require that forfeitures be used to reduce employer contributions rather than pay
26   administrative expenses.  Rather, the proposed regulation includes both as
27   permissible uses, along with using the forfeitures to increase benefits.  A such,

28

7

1   complying with ERISA by using the forfeitures solely to defray plan expenses or
2   increase benefits would not conflict with the proposed regulation.

3   Finally, the mere fact that compliance with ERISA's statutory mandates may
4   preclude one of several otherwise permissible options for using forfeitures does not
5   mean that it would "modify, impair or supersede" the proposed IRS regulation. *See*
6   *Guidry v. Sheet Metal Workers Nat. Pension Fund*, 493 U.S. 365, 375 (1990) (rejecting
7   argument that "application of ERISA's anti-alienation provision to preclude a remedy
8   that would otherwise be available would 'modify, impair or supersede'" the Labor-
9   Management Reporting and Disclosure Act, notwithstanding that the LMRDA
10  authorized the remedy that ERISA precluded).  Regardless of whether compliance
11  with ERISA prohibits using forfeitures to reduce employer contributions, the IRS
12  would remain free to separately decide whether such use qualifies a plan for
13  favorable tax treatment.  *Cf. In re McIntyre*, 222 F.3d 655, 660 (9th Cir. 2000)
14  (holding that ERISA "cannot prevent the IRS from undertaking what would
15  otherwise be a valid exercise of its . . . authority").

16  **III.   Plaintiff Has Stated a Claim for Breach of Fiduciary Duties.**

17  "To state a claim for breach of fiduciary duty under ERISA, a plaintiff must
18  allege that (1) the defendant was a fiduciary; and (2) the defendant breached a
19  fiduciary duty; and (3) the plaintiff suffered damages."   *Bafford v. Northrop*
20  *Grumman Corp.*, 994 F.3d 1020, 1026 (9th Cir. 2021).

21  **A. Defendants Were Acting as Fiduciaries When They Decided**
22  **How to Apply Forfeitures While Administering the Plan.**

23  Plaintiff challenges Defendants' decisions to apply forfeitures to offset the
24  contributions HP was required to make rather than to defray expenses charged to
25  participants. *See* Compl. ¶¶ 16, 23, 37-40, 43-47.  Defendants do *not* dispute that the
26  forfeited contributions are "plan assets," and the Ninth Circuit has recognized that
27  employer contributions "become plan assets" once "the employer pays the employer
28  contributions over to the plan." *Cline v. Indus. Maint. Eng'g & Cont. Co.,* 200 F.3d

8

1223, 1234 (9th Cir. 2000).   Nevertheless, Defendants argue, unpersuasively, that their decisions concerning how to use the forfeitures cannot be challenged because they were acting in a settlor, not fiduciary, capacity when they made them.

### 1. Plaintiff Does Not Challenge any Settlor Decisions.

A person acts as a "settlor" when the person "makes a decision regarding the form or structure of the Plan." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999).  This includes plan design decisions "such as establishing, funding, amending, and terminating the trust." *Coulter v. Morgan Stanley & Co. Inc.,* 753 F.3d 361, 367 (2d Cir. 2014).

In contrast, decisions made while administering, as opposed to designing, a plan may trigger fiduciary duties.  In this regard, ERISA expressly provides that "to the extent" a decision involves "exercis[ing] *any* authority or control respecting management or disposition of [plan] assets," ERISA's "fiduciary" protections are triggered.  29 U.S.C. § 1002(21)(A) (emphasis added); *see also Tr. Of S. Cal. Bakery Drivers Security Fund v. Middleton*, 474 F.3d 642, 646 (9th Cir. 2007) (holding that where "plan assets" are at issue, "an entity that takes actions in regard to their management and disposition must be judged against ERISA's fiduciary standards") (internal quotation marks omitted).

Here, Defendants argue that "decisions to offer a plan – as well as related decisions over its terms, how it will be administered, how it will be funded, whether to make employer contributions (and, if so, how much to contribute), and whether to charge expenses to the plan (or volunteer, as the employer, to pay them instead) – are all plan design decisions made in a *settlor* capacity, not a fiduciary capacity." MTD p. 8 (emphasis in original).  But Plaintiff does not challenge any of these types of "design decisions."  Rather, Plaintiff's Complaint focuses solely on decisions that were made, in the course of administering the Plan, concerning the management and disposition of Plan assets.  *See* Compl. ¶¶ 23-29.

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

1    While HP's decision to design a Plan that allowed Defendants multiple options

2    for allocating forfeitures was a plan design and thus settlor decision (Plan Doc. §

3    11(k)), Defendants' choice of how to allocate the forfeitures among these options when

4    implementing the Plan was not.  Similarly, while HP's decision to design a Plan that

5    provided for administrative expenses to "be charged to and paid out of the [Plan]

6    pursuant to directions of the Company" was a settlor decision (Plan Doc. § 17(b)),

7    Defendants' decision to repeatedly direct, in the course of implementing this

8    provision, that no forfeitures in the Plan be used to defray expenses was not.

9    The law in this Circuit is clear: the implementation of a settlor decision is not

10   itself a settlor decision.  *See Waller v. Blue Cross of Cal.*, 32 F.3d 1337, 1342-43 (9th

11   Cir. 1994) (holding that, although an employer's "*decision* to terminate" the plan was

12   "a business decision" that could "not constitute a breach of fiduciary obligation," the

13   "*implementation* of the decision," such as "choosing annuity providers to satisfy plan

14   liabilities," triggered "fiduciary" obligations) (emphasis in original); *see also Asner v.

15   SAG-AFTRA Health Fund*, 557 F. Supp. 3d 1018, 1033 (C.D. Cal. 2021) ("Although

16   decisions concerning plan design are normally 'settlor' in nature, and therefore not

17   subject to ERISA fiduciary duties, the implementation of decisions concerning plan

18   design can be subject to ERISA fiduciary duty.").

19   The cases holding that funding decisions are not fiduciary decisions reason

20   that, *before* employer contributions are deposited into the plan, they are not "plan

21   assets" and, as such, decisions about whether to fund, how to fund, or the amount to

22   fund a plan do not involve discretion or control over "plan assets."  *See, e.g., Glazing

23   Health & Welfare Fund v. Lamek*, 896 F.3d 908, 910 (9th Cir. 2018) (dismissing

24   breach of fiduciary duty claims arising out of failure to make required plan

25   contributions because "[u]ntil the employers pay the employer contributions over to

26   the plan, the contributions do not become plan assets over which fiduciaries of the

27   plan have a fiduciary obligation"); *Coulter v. Morgan Stanley & Co., Inc.*, 753 F.3d

28   361, 367 (2d Cir. 2014) ("Defendants' decision to fund Company contributions in

10

1   Company stock could not constitute a fiduciary act because, *at the time of the*
2   *decision*, the Company stock was *not* a Plan asset.") (emphasis added).  Defendants'
3   reliance on this line of cases is misplaced because Plaintiff challenges Defendants'
4   decisions regarding how to apply forfeited contributions *after* they have been paid to
5   the Plan and have become "plan assets."  Compl. ¶¶ 16, 21-23.

6       For example, in *Thondukolam v. Corteva, Inc*, 2020 WL 1984303 (N.D. Cal.
7   Apr. 27, 2020), the plaintiffs "challenge[d] defendants' failure to fund the plan" as
8   well as "the allocation of funds within the Plan."  *Id*. at *2-3.  The Court found that,
9   although the alleged "failure to fund the Plan … does not trigger fiduciary
10  obligations," the "decisions regarding fund allocation" do.  *Id*. at *3.  Like Plaintiff's
11  allegations here, the plaintiffs in *Thondukolam* challenged the employer's decision
12  "to apply the contributions … to meet future Minimum Required Contribution
13  obligations without having to actually contribute additional assets to the Plan."  *Id*.
14  (alterations omitted).  The Court found the employer's decision about how to apply
15  the contributions to be a fiduciary, not a settlor, decision even though the employer
16  was applying the contributions towards its funding obligation.  *Id*.

17      At bottom, while Defendants may have acted as settlors when deciding to
18  assign to themselves the authority to determine how forfeitures should be applied,
19  they acted as a fiduciary when they subsequently exercised that authority over "plan
20  assets."  *See Akers v. Palmer*, 71 F.3d 226, 230 (6th Cir. 1995) (holding that a
21  company is "subject to fiduciary restrictions when managing a plan according to its
22  terms, but not when it decides what those terms are to be").

23              **2.  Defendants Managed and/or Disposed of Plan Assets.**

24      As noted above, ERISA deems a person to be a fiduciary of a plan "to the
25  extent" the person "exercises *any* authority or control respecting *management or*
26  *disposition of its assets*."  29 U.S.C. § 1002(21)(A)(i) (emphasis added).  This means
27  that "[a]ny control over disposition of plan money" – regardless of whether such
28  control is "discretionary" – "makes the person who has the control a fiduciary."  *IT*

11

1    *Corp. v. Gen. Am. Life Ins. Co.*, 107 F.3d 1415, 1421 (9th Cir. 1997); *Doe v. United*
2    *Behavioral Health*, 523 F. Supp. 3d 1119, 1127 (N.D. Cal. 2021) (recognizing that,
3    even if defendant "exercised no discretion in applying" the plan's language, "an entity
4    is also a fiduciary where it 'exercises any authority or control respecting management
5    or disposition of [plan] assets'").

6        Defendants do not dispute that the forfeitures in the Plan are "plan assets."
7    Nor do Defendants dispute that they exercised control over the management and
8    disposition of those assets.  In fact, Defendants *concede* that the decision whether to
9    use forfeitures in the Plan to defray Plan expenses was made "pursuant to *directions*
10   *of the Company"* (defined as HP Inc.)."  MTD p. 9 (emphasis in original).  Therefore,
11   Defendants were necessarily acting as fiduciaries when they exercised control over
12   those plan assets by deciding how to use them.

13       The law is clear that where "plan assets" are at issue, "an entity that takes
14   'actions in regard to their management and disposition must be judged against
15   ERISA's fiduciary standards.'"  *Tr. of S. Cal. Bakery Drivers Security Fund v.*
16   *Middleton*, 474 F.3d 642, 646 (9th Cir. 2007) (quoting *John Hancock Mut. Life Ins.*
17   *Co. v. Harris Trust & Sav. Bank*, 510 U.S. 86, 106 (1993)); *Briscoe v. Fine*, 444 F.3d
18   478, 494 (6th Cir. 2006) ("[A]ny person or entity that exercises control over the assets
19   of an ERISA-covered plan … acquires fiduciary status with regard to the control of
20   those assets"); *David P. Coldesina, D.D.S. v. Est. of Simper*, 407 F.3d 1126, 1132
21   (10th Cir. 2005) ("In Congress's judgment, and consistent with general trust law,
22   parties controlling plan assets are *automatically* in a position of confidence by virtue
23   of that control, and as such they are obligated to act accordingly.") (emphasis in
24   original); *Srein v. Frankford Tr. Co.*, 323 F.3d 214, 221 (3d Cir. 2003) (holding that
25   the ability to "divert the value of" a plan asset from one "account" to another is, "by
26   any definition, the exercise of 'control' (if not 'authority') respecting 'disposition of
27   [plan] assets'"); *Blatt v. Marshall & Lassman*, 812 F.2d 810, 813 (2d Cir. 1987)
28   (finding that the exercise of actual control over plan assets rendered defendants

12

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS**

1  "fiduciaries to the extent of this actual control").

2  Because Defendants do not dispute that they exercised control over "plan

3  assets" when deciding how forfeitures should be applied, as a matter of law they

4  could not have been wearing a "settlor hat" when making those decisions. *See IT*

5  *Corp.*, 107 F.3d at 1421 ("Any control over disposition of plan money makes the

6  person who has the control a fiduciary.").

7  **3.  Defendants Had Discretion Over Plan Administration.**

8  ERISA *also* deems a person to be a fiduciary of a plan "to the extent" the

9  person "has any discretionary authority or discretionary responsibility in the

10  administration of such plan."  29 U.S.C. § 1002(21)(A)(iii).  "The ordinary trust law

11  understanding of fiduciary 'administration' of a trust is that to act as an

12  administrator is to perform the duties imposed, or exercise the powers conferred, by

13  the trust documents."  *Varity Corp. v. Howe*, 516 U.S. 489, 502 (1996).  "[W]hen a

14  plan or policy requires the performance of an act of plan management or

15  administration in a specific manner, then ERISA's fiduciary duties are not

16  implicated."  *Edmonson v. Lincoln Nat. Life Ins. Co.*, 725 F.3d 406, 422 (3d Cir.

17  2013).  "But when the plan or policy permits some leeway in how an act is performed,

18  then the discretionary choice on how to perform that act is cabined by ERISA's

19  fiduciary duties."  *Id.*

20  Here, the Plan provides Defendants with "some leeway" in deciding how to use

21  forfeitures.  In this regard, it entrusts them with deciding among multiple options for

22  the "use of forfeitures" by providing that these assets "may be used to reduce

23  employer contributions, to restore benefits previously forfeited, to play Plan

24  expenses, or for any other permitted use."  Plan Doc. § 11(h).  Given such broad

25  "leeway" to choose how to use forfeitures, Defendants indisputably had "discretionary

26  authority or discretionary responsibility in the administration" of the forfeiture

27  provision, thereby rendering them fiduciaries when exercising that discretion.

28

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

**B. Plaintiff Has Alleged that Defendants Breached Their Fiduciary Duties.**

ERISA commands that fiduciaries discharge their duties "*solely* in the interest of the participants and beneficiaries" and for "the *exclusive* purpose" of providing them benefits and "*defraying*" their "*expenses*." 29 U.S.C. § 1104(a)(1)(A) (emphasis added). ERISA also "imposes a 'prudent person' standard by which to measure fiduciaries' investment decisions and disposition of assets." *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 419 (2014) (citation omitted); 29 U.S.C. § 1104(a)(1)(B). These twin statutory duties together compel fiduciaries "to act in the best interests of the plan participants and beneficiaries." *Barker v. Am. Mobil Power Corp.,* 64 F.3d 1397, 1403 (9th Cir. 1995).

Plaintiff alleges that Defendants failed to act in the participants' best interests when they chose to apply *all* of the forfeitures to offset HP's own contribution debt rather than defray *any* of the expenses charged to participant accounts. Compl. ¶¶ 23-29, 37-39, 44-46. Defendants contend that these allegations fail, as a matter of law, because they acted in compliance with IRS regulations and the Plan terms. *See* MTD 10-12. However, Plaintiff need not show that Defendants violated a tax regulation or a Plan term to state a claim for breach of fiduciary duties.

**1. Compliance With Existing and Proposed IRS Regulations Is Not a Defense to ERISA Claims.**

Defendants' purported compliance with 26 C.F.R. § 1.401-7(a) and the *proposed* IRS regulation is not a defense to Plaintiff's ERISA claims. Aside from being inapplicable to this case (as shown above), the existing and proposed IRS regulations do not purport to govern compliance with ERISA. They merely address limitations on permissible uses of forfeitures to remain tax exempt under section 401(a) of the Internal Revenue Code. *See* 88 Fed. Reg. 12282 (2023). But section 401(a) has no application to determining compliance with ERISA. *See McDaniel v. Chevron Corp.,* 203 F.3d 1099, 1117-18 (9th Cir. 2000) (rejecting the notion that

14

1  "ERISA incorporates" IRC § 401(a)); *Reklau v. Merchants Nat. Corp.,* 808 F.2d 628,

2  631 (7th Cir. 1986) (refusing "to read § 401(a) of the I.R.C. as applicable to ERISA").

3      Because the existing and proposed IRS regulations do not apply to ERISA,

4  Defendants purported compliance with them is of no legal consequence.  *Accord*

5  *Esden v. Bank of Bos.*, 229 F.3d 154, 176 (2d Cir. 2000) (holding that "[a] favorable

6  determination letter [from the IRS] indicates only that an employee retirement plan

7  qualifies for favorable tax treatment by meeting the formal requirements of I.R.C. §

8  401(a). … [T]he determination letters do not bar plan participants from asserting

9  their rights under ERISA.").

10      **2.  Defendants Cannot Hide Behind the Terms of the Plan.**

11      Defendants also assert that Plaintiff "alleges nothing that would constitute a

12  fiduciary breach" because the alleged conduct was in "compliance with the governing

13  Plan document," which permits using forfeitures to reduce employer contributions.

14  MTD p. 2.  According to Defendants, absent an allegation that the Plan "*required*

15  Defendants to use forfeitures to pay administrative expenses," there could be no

16  fiduciary breach by declining to use the assets for such purpose.   MTD p. 10

17  (emphasis in original).  Defendants misunderstand the law.

18      As a legal matter, Defendants are simply wrong that fiduciaries are

19  categorically immune from liability so long as they comply with plan terms that are

20  not themselves unlawful.  Fiduciaries must act "in accordance with the documents

21  and instruments governing the plan *insofar as such documents and instruments are*

22  *consistent with the provisions of this subchapter*."   29 U.S.C. § 1104(a)(1)(D)

23  (emphasis added).  As the Supreme Court in *Fifth Third* explained, "[t]his provision

24  makes clear that" ERISA's fiduciary duties "trump[] the instructions of a plan

25  document[.]" 573 U.S. at 421; *see also Cent. States, Se. & Sw. Areas Pension Fund v.*

26  *Cent. Transp., Inc.,* 472 U.S. 559, 568 (1985) (holding that "trust documents cannot

27  excuse trustees from their duties under ERISA, and that trust documents must

28  generally be construed in light of ERISA's policies").

15

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

*Fifth Third* concerned the duty of prudence as applied to an employee stock ownership plan (ESOP), "a type of pension plan that invests primarily in the stock of the company that employs the plan participants."   573 U.S. at 412.   The plan required "the ESOP's funds to be invested primarily in shares of common stock of Fifth Third."   *Id.*   There was no question that this term was lawful.   In fact, the Supreme Court acknowledged that "ESOP plans instruct their fiduciaries to invest in company stock, and § 1104(a)(1)(D) requires fiduciaries to follow plan documents so long as they do not conflict with ERISA."  *Id.* at 423–24.  And the Court recognized that "in many cases an ESOP fiduciary who fears that continuing to invest in company stock may be imprudent finds himself between a rock and a hard place: If he keeps investing and the stock goes down he may be sued for acting imprudently in violation of § 1104(a)(1)(B), but if he stops investing and the stock goes up he may be sued for disobeying the plan documents in violation of § 1104(a)(1)(D)."  *Id.* at 424. Nevertheless, a unanimous Supreme Court held "that the duty of prudence trumps the instructions of a plan document, such as an instruction to invest exclusively in employer stock even if financial goals demand the contrary."  *Id.* at 421.

*Fifth Third* forecloses Defendants' argument that compliance with Plan terms excuses their failure to apply forfeitures to defray expenses.  Defendants rely on the Ninth Circuit's decision in *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090 (9th Cir. 2004), for the proposition that there can be no breach where fiduciaries "complied with the Plan's lawful terms and were under no legal obligation to deviate from those terms."  *Id.* at 1100.  But *Wright* must be read in conjunction with the Supreme Court's subsequent opinion in *Fifth Third,* which held that fiduciaries *are* obligated to deviate from plan terms where necessary to satisfy their fiduciary duties. *See* 573 U.S. at 421.

For example, in *Doe v. United Behavioral Health*, 523 F. Supp. 3d 1119 (N.D. Cal. 2021), the plaintiff sued a welfare benefit plan's administrator for breach of ERISA's fiduciary duties after the administrator denied a claim for reimbursement of

16

his treatment costs for Autism.  It was undisputed that the plan explicitly excluded coverage for the type of treatment that the plaintiff received.  The administrator moved for summary judgment on that basis, arguing that it merely applied the language of the exclusion and lacked any authority to deviate from the plan's terms.

The Court denied the administrator's motion notwithstanding the exclusion and the administrator's inability to rewrite it.  Relying on ERISA § 404(a)(1)(D) and *Fifth Third*, as well as numerous circuit court decisions, the Court held that "plan terms cannot override fiduciary duties" because "the statute explicitly requires a fiduciary to apply a plan's terms, but *only* if those terms do not violate ERISA."  *Id.* at 1127 (emphasis in original).  The Court reasoned that because "ERISA imposes specific and independent duties on its fiduciaries to otherwise comply with the provisions of ERISA[,]" the administrator "cannot hide behind the plan terms" to immunize its decision-making from ERISA scrutiny.  *Id.*

By statute, Defendants had a fiduciary duty to "discharge" their "duties with respect to the plan solely in the interest of the participants," which includes "defraying" the "expenses of administering the plan."  29 U.S.C. § 1104(a)(1)(A)(ii). As in *Doe*, Defendants cannot hide behind the Plan's terms to excuse their failure to comply with the statute.  Regardless of what the Plan said about the use of forfeitures and the payment of expenses, ERISA imposed independent duties on Defendants to use forfeitures in the participants' best interests.  *See Feinberg v. T. Rowe Price Grp., Inc.*, 2021 WL 488631, at *6 (D. Md. Feb. 10, 2021) (holding that "a fiduciary has an obligation to diverge from plan document instructions where necessary to protect the interests of plan participants").  Because Plaintiff has alleged that Defendants failed to do that, and thereby harmed the Plan and its participants, he has stated a claim for breach of fiduciary duties.

### 3.     Defendants Mischaracterize the Allegations.

Defendants misstate the specific conduct challenged by the Complaint. Contrary to Defendants' misrepresentations, the Complaint does *not* allege that

17

1   "ERISA's fiduciary provisions prohibit HP from allocating forfeitures toward other

2   benefits" or "to other participant accounts."   MTD pp. 1, 12, 14.   Rather, Plaintiff

3   challenges Defendants' distinct decisions to use the forfeitures "to reduce [HP's]

4   matching contributions," despite other available options that complied with the

5   statutory mandate to act "solely in the interest of the participants."   Compl. ¶¶ 23-30,

6   39, 45, 29 U.S.C. § 1104(a)(1) (emphasis added).   Using forfeitures to forgive an

7   employer's debt is *not* synonymous with, nor a prerequisite to, providing benefits.

8   Just the opposite, using Plan assets for the express purpose of "reduc[ing]" HP's

9   "matching contributions" – thereby *decreasing* funds otherwise available for paying

10   benefits and covering Plan expenses – is irreconcilable with acting "for the *exclusive*

11   purpose" of "providing benefits" and "defraying" Plan "expenses."   *See* Exhs. 1-5 (Note

12   1 to Financial Statements of Form 5500s); 29 U.S.C. § 1104(a) (emphasis added).

13   Also, contrary to Defendants' mischaracterizations, Plaintiff does *not* seek

14   "increased employer contributions . . . above those [HP] committed to provide in the

15   Plan"; nor does Plaintiff seek to "force HP to pay for Plan expenses."   *See* MTD p. 9.

16   The Plan specifies the level of employer "Matching Contributions" that HP committed

17   to provide, *see* Plan Doc. § 5(d), and Plaintiff does not challenge that provision.

18   Likewise, Plaintiff does not challenge the Plan provision requiring that

19   administrative expenses "shall be charged to and paid out of the [Plan]."   *See* Plan

20   Doc. § 17(b).   Indeed, the forfeitures at issue here are indisputably assets of the Plan

21   from which administrative expenses could have been paid.   *See* Plan Doc. § 11(h);

22   MTD p. 13.   Plaintiff's allegations are concerned solely with whether Defendants,

23   while managing and disposing of these Plan assets, complied with their fiduciary

24   duty to act "in the best interests of the plan participants."   *Barker,* 64 F.3d at 1403.

25   **IV.   Plaintiff States a Claim for Unlawful Inurement.**

26   ERISA provides that "the assets of a plan shall never inure to the benefit of

27   any employer and shall be held for the exclusive purpose of providing benefits to

28   participants in the plan and their beneficiaries and defraying reasonable expenses of

1   administering the plan."  29 U.S.C. § 1103(c)(1).  Plaintiff alleges that this provision

2   was violated when Defendants elected to use forfeited contributions in the Plan "as a

3   substitute for" HP's "own future contributions to the Plan, thereby saving" HP

4   "millions of dollars in contribution expenses."  Compl. ¶ 52; *see also id.* ¶¶ 24-30.

5        Defendants argue, incorrectly, that the "fact that HP might ultimately

6   contribute less additional money to the Plan is immaterial" so long as the forfeitures

7   "remain in the Plan."  MTD p. 12.

8                    **A.    Plan Assets Cannot Forgive Employer Debts.**

9        The anti-inurement rule is violated where, as here, plan assets are used to

10  forgive an employer's debts to the plan.  For example, in *Holland v. Arch Coal, Inc.*,

11  947 F.3d 812 (D.C. Cir. 2020), a statute required certain coal operators to fund an

12  ERISA welfare benefit plan by, among other methods, providing security in the form

13  of a bond, letter of credit, or cash escrow in an amount equal to a portion of their

14  retirees' future health care costs.  Following a series of corporate transactions, the

15  defendant's security obligation was satisfied with a letter of credit.  But after the

16  plan drew down the letter of credit, it sued to compel the defendant to provide

17  additional security.  The defendant argued that the proceeds of the letter of credit

18  should be used either to (1) satisfy the requirement that it provide additional security

19  to the plan, or (2) offset its obligation to make contributions to the plan.

20       The D.C. Circuit rejected this contention as prohibited by ERISA's anti-

21  inurement rule.  The Court explained that using the proceeds of the letter of credit

22  "in either case" would "serv[e] to reduce" the defendant's debt "obligations" to the

23  plan.  *Id.* at 821.  Using the proceeds in this way, the Court held, would "run afoul of

24  the clear injunction in ERISA that the 'assets of a plan shall never inure to the

25  benefit of any employer.'"  *Id.* (quoting 29 U.S.C. § 1103(c)(1)).  *Holland* thus stands

26  for the principle that the anti-inurement rule prohibits plan assets from being used

27  to satisfy any part of an employer's debt obligations to the plan.

28

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**

*Holland* is not alone.   Many other courts have held that plan assets impermissibly inure to the benefit of the employer when used as a credit against the employer's contribution obligations to a plan.  *See Chao v. Malkani*, 452 F.3d 290, 298 (4th Cir. 2006) (holding that the "requested offset" of excess contributions "would violate ERISA's anti-inurement provision, because Plan assets would benefit" the employer); *Brown v. Health Care & Ret. Corp. of Am.*, 25 F.3d 90, 93 (2d Cir. 1994) (holding that a "set off" of "amounts overpaid against monies yet to be paid" is "equally in derogation of the principle that funds of an ERISA plan must never inure to the benefit of the employer"); *Bd. of Trs. v. Grand River Navigation Co., Inc.,* 2021 WL 1215060, at *9 (D. Md. Mar. 30, 2021) ("ERISA's anti-inurement provision not only prohibits the transfer of plan assets to an employer, but also forbids the use of plan assets in any way that would benefit a contributing employer, including giving an employer a credit for past overpayments."); *Operating Eng'rs Loc. 324 Health Care Plan v. Dalessandro Cont. Grp., LLC,* 2012 WL 831758, at *5 (E.D. Mich. Mar. 12, 2012) ("To give Defendant an offset or credit for its overpayments would go against the plain language of 29 U.S.C. § 1103(c)(1), which states that 'the assets of a plan shall never inure to the benefit of any employer.'").

In *Chao v. Anderson*, 2007 WL 1448705 (E.D. Va. May 9, 2007), for example, the defendant employers argued that their contribution debt to the plan should be offset "by applying the balance of the Forfeiture Account to the Plan's shortfall." *Id.* at *2.  The Court disagreed, reasoning that "allowing such an offset would violate ERISA's anti-inurement provision that 'the assets of a Plan shall never inure to the benefit of any employer.' 29 U.S.C. § 1103(c)(1)." *Id.*  The Court rejected the defendants' claim that "they do not request any benefit, but simply ask for the assets in the Forfeiture Account to be distributed to the rightful employees." *Id.*  "Such a distribution," the Court held, "would still inure to the benefit of" the defendants, "albeit in the form of debt-relief." *Id.*  "Such a benefit is clearly within the scope of the statute's text, and thus, would violate the anti-inurement provision." *Id.*

20

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'**
**MOTION TO DISMISS**

The cases cited by Defendants are not to the contrary.  In *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432 (1999), the employer used surplus assets in an overfunded defined benefit plan to fund a new noncontributory benefits structure.  The Court held that the employer "did not act impermissibly by using surplus assets from the contributory structure to add the noncontributory structure to the Plan." *Id.* at 442. Critically, as the Court pointed out, "at all times" the employer had "satisfied its continuing obligation under the provisions of the Plan and ERISA to assure that the Plan was adequately funded." *Id.*  Thus, the Court emphasized that the employer had *not* used plan assets to satisfy its debt to the plan.  Rather, the employer used surplus assets to provide *additional* benefits not previously required.

Likewise, in *Spink v. Lockheed Corp.*, 125 F.3d 1257 (9th Cir. 1997), the employer amended a defined benefit plan to offer new "increased retirement benefits" that "were paid out of the Plan's surplus assets." *Id.* at 1260.  There was no contention that the employer had used plan assets to forgive its debts to the plan.

Same with *Holliday v. Xerox Corp.*, 732 F.2d 548 (6th Cir. 1984).  There, the employer established an additional benefit program to ensure that annual pension payments were brought up to a "minimum pension floor." *Id.* at 549.  To determine the "increase" in employer contributions necessary to guarantee a "minimum pension floor," the "annuity payments" under the existing retirement plans were "subtracted as a setoff" from the "minimum pension floor." *Id.* at 549, 551.  The annuity payments were not used to forgive the employer's debt, but to calculate the "net increase" in contributions necessary to fund an *additional* benefit. *Id.* at 551.

**B.    Forfeitures Were Used to Forgive HP's Debts to the Plan.**

The Plan required HP to make a "Matching Contribution" to the Plan in "cash" on behalf of each participant at a rate equal to 100% of the first 4% the participant's compensation contributed to the Plan. *See* Plan Doc. § 5(c) & (d).  This provision guaranteed that the Plan would receive a fixed amount of "new money" from HP each year.  When Defendants allocated forfeitures to reduce HP's contributions in years

21

2019 to 2023, "old money" already in the Plan was recycled and substituted for "new money" that was supposed to come into the Plan. The upshot is that in each of those years, HP contributed less in "new money" than it otherwise would have had the forfeitures been allocated elsewhere. This debt forgiveness constituted a direct and greater-than-incidental benefit to HP in violation of ERISA's anti-inurement rule. *See Chao*, 2007 WL 1448705, at *2 (holding that the anti-inurement rule prohibits forfeitures from being used to offset employer debts to the plan).

Furthermore, HP's attempt to equate itself with a customer who is "credited back the cost" for purchasing "items" if it later "turns out" such merchandise is "not in stock" is misplaced. MTD p. 7. This inapposite analogy disregards the unique protections ERISA imposes on monies deposited with a plan, which, absent limited exceptions not applicable here, "shall never inure to the benefit of any employer." 29 U.S.C. § 1103(c); *Carriers Container Council, Inc. v. Mobile S.S. Ass'n Inc.,* 896 F.2d 1330, 1340 (11th Cir. 1990) ("Section 1103(c) reflects a policy of limiting an employer's access to monies once he has paid them into a fund for the benefit of employees, even if the payment was made by mistake."). Moreover, unlike a customer, HP, as the Plan administrator, had a fiduciary duty to "to act in the best interests of the plan participants and beneficiaries," *not itself*, with respect to the "management and disposition of" the funds at issue here. *See Barker v. Am. Mobil Power Corp.,* 64 F.3d 1397, 1403 (9th Cir. 1995); 29 U.S.C. § 1002(21)(A).

## V. <u>Plaintiff States a Claim for Prohibited Transactions.</u>

### A. <u>Plaintiff Alleges a Transaction in Violation of § 1106(a).</u>

ERISA prohibits fiduciaries from causing the plan to engage in "a transaction" in which property is "exchange[d]" with a "party in interest" or "assets of the plan" are "use[d] by or for the benefit of a party in interest." 29 U.S.C. § 1106(a)(1)(A) & (D). Plaintiff alleges that "[b]y electing to use forfeited funds in the Plan as a substitute for" HP's required "contributions to the Plan," Defendants, acting as a fiduciary as established above, "caused the Plan to engage in transactions that

22

1  constituted a direct or indirect exchange of existing Plan assets for future employer

2  contributions and/or a use of Plan assets by or for the benefit of" HP.  Compl. ¶ 57.

3       Defendants do not dispute that HP, as the "employer" of Plan participants, is a

4  "party in interest."  *See* 29 U.S.C. § 1002(14)(C).  Furthermore, Defendants concede

5  that forfeitures are "Plan assets."  MTD p. 14.  Instead, Defendants argue that

6  Plaintiff "alleges *no 'transaction'* between the Plan and any other party" because the

7  "forfeitures remain in the Plan."  MTD p. 14.  That is incorrect.

8       Under the "transaction" challenged by Plaintiff, there is an "exchange"

9  between the Plan, on the one hand, and HP, a "party in interest," on the hand,

10  whereby the assets of the Plan are used to pay HP's debt to the Plan.  Furthermore,

11  to qualify as a "prohibited transaction" it is unnecessary for assets to leave a plan.

12  Rather, the Supreme Court has recognized that a fiduciary who fails to "assur[e] full

13  and prompt *collection of* contributions" – as Defendants allegedly did here by

14  impermissibly using forfeitures as a substitute for contributions – may "be found to

15  have violated" ERISA's prohibited transactions. *Cent. States, Se. & Sw. Areas*

16  *Pension Fund v. Cent. Transp., Inc.,* 472 U.S. 559, 572-74 (1985) (emphasis added).

17       Defendants also argue that the transactions challenged by Plaintiff are not the

18  type of "commercial bargains" that the statute was intended to prohibit.  However,

19  the Supreme Court has found a nearly identical arrangement to be a "transaction"

20  prohibited by the Internal Revenue Code's parallel provision.

21       Like 29 U.S.C. § 1106(a)(1)(A), 26 U.S.C. § 4975(c)(1)(A) prohibits the "sale or

22  exchange" of property "between a plan and a disqualified person."  The issue in

23  *Commissioner v. Keystone Consolidated Industries, Inc.*, 508 U.S. 152 (1993), was

24  whether this provision was violated when the plan received contributions of real

25  property from the employer, a "disqualified person," in satisfaction of the employer's

26  contribution obligations to the plan.  The Supreme Court held that "[t]he contribution

27  of property in satisfaction of a funding obligation is at least both an indirect type of

28  sale and a form of exchange, since the property is exchanged for diminution of the

23

1   employer's funding obligation." *Id.* at 159.

2       So too here.  Defendants' use of forfeitures to reduce HP's contributions is a

3   form of "exchange," since forfeitures are exchanged for a diminution of HP's funding

4   obligation.  Indeed, the Department of Labor has taken the position in briefing that

5   the "use of" a plan's "forfeiture account funds to reduce the amount [an employer]

6   had to pay for its declared matching obligation were prohibited transactions, in

7   violation of 29 U.S.C. § 1106(a)(1)(D)" because it "caused a direct financial benefit to"

8   the employer.  *See* Request for Judicial Notice, Exh. 6 (DOL Br. pp. 11, 23).

9       **B.     Plaintiff Alleges Self-Dealing in Violation of § 1106(b)(1).**

10      ERISA also prohibits a fiduciary from "deal[ing] with the assets of the plan in

11  his own interest or for his own account." 29 U.S.C. § 1106(b)(1).  Plaintiff alleges that

12  HP violated this prohibition when it used forfeitures "as a substitute for future

13  employer contributions to the Plan, thereby saving the Company millions of dollars

14  in contribution expenses."  Compl. ¶ 62.  Defendants argue that this is not a

15  "transaction."  But the statute does not require a "transaction."

16      Subdivision (b) of 29 U.S.C. § 1106, which prohibits self-dealing, is "broader in

17  scope" than subdivision (a).  *Int'l Bhd. of Painters & Allied Trades Union and Indus.*

18  *Pension Fund v. Duval*, 925 F. Supp. 815, 825 (D.D.C. 1996).  It provides that "[a]

19  fiduciary with respect to a plan shall not – *deal with* the assets of the plan in his own

20  interest or for his own account," and makes no mention of a "transaction."  29 U.S.C.

21  § 1106(b)(1) (emphasis added).  Although "the statutory heading uses the word

22  'transactions' … the title of a statute cannot limit the plain meaning of the text."

23  *United Food & Com. Workers Int'l Union-Indus. Pension Fund v. Bank of N.Y.*

24  *Mellon*, 2014 WL 4627904, at *6 (N.D. Ill. Sept. 16, 2014); *see also Sec'y of Labor v.*

25  *Seward Ship's Drydock, Inc.*, 937 F.3d 1301, 1309 (9th Cir. 2019) (same).  Because

26  the actual text of "§ 1106(b)(1) does not use the word 'transaction,'" an "affirmative

27  transaction" is not "required" to state a claim.  *United Food*, 2014 WL 4627904, at *6.

28      Here, HP does not dispute that the forfeitures were "assets of the Plan."  Nor

24

does HP dispute that it "dealt with" the forfeitures in its own interest or for its own account by using these Plan assets to reduce its contributions to the Plan. Accordingly, Plaintiff has stated a claim for self dealing.  *See Acosta v. Pac. Enterprises*, 950 F.2d 611, 621 (9th Cir. 1992) ("In order to state a claim for self-dealing under ERISA," a plaintiff "must demonstrate that" the defendant "actually used its power to deal with the assets of the plan for its own benefit or account.").

## VI.    Plaintiff Alleges a Plausible Breach of the Duty to Monitor.

HP has the power to create and oversee the Committee.  *See* Compl. ¶¶ 67-68. As such, HP has a duty to monitor the Committee.  *See Solis v. Webb*, 931 F. Supp. 2d 936, 953 (N.D. Cal. 2012) ("Implicit within the duty to select and retain fiduciaries is a duty to *monitor* their performance.") (emphasis in original).  This required HP "to ensure that" the Committee complied "with the terms of the plan *and statutory standards*." 29 C.F.R. § 2509.75-8, at FR–17 (emphasis added).

Plaintiff alleges that "HP breached its fiduciary monitoring standard with respect to the Committee by, among other things, failing to monitor the Committee's management and use of forfeited funds in the Plan and by failing to take steps to ensure that the Committee was discharging its duties with respect to Plan assets for the sole benefit of Plan participants and beneficiaries." Compl. ¶ 70.  Defendants argue that this claim should be dismissed because it "is derivative of Plaintiff's other claims," which "fail" to state a claim. MTD p. 15.

As Plaintiff has demonstrated, however, Plaintiff has adequately alleged that Defendants committed numerous plausible violations of ERISA.  Accordingly, Plaintiff has also adequately alleged a plausible breach of HP's duty to monitor.

### CONCLUSION

For the foregoing reasons, Plaintiff respectfully requests that the Court deny Defendants' motion to dismiss in its entirety.

DATED:  February 23, 2024                    **HAYES PAWLENKO LLP**

/s/Matthew B. Hayes

25

**PLAINTIFF'S *AMENDED* OPPOSITION TO DEFENDANTS'
MOTION TO DISMISS**