UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN JOSE DIVISION

| | |
|---|---|
| PAUL HUTCHINS,<br><br>             Plaintiff,<br><br>    v.<br><br>HP INC., et al.,<br><br>             Defendants. | Case No. 23-cv-05875-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS WITH LEAVE TO AMEND**<br><br>[Re: ECF No. 25] |

This purported class action presents a novel question: Whether and under what circumstances is a plan administrator's decision to use "forfeited" employer contributions to a retirement plan to reduce employer contributions rather than to pay administrative costs a violation of the Employee Retirement Income Security Act ("ERISA")? Plaintiff Paul Hutchins has opened with a swing for the fences—his Complaint takes the position that a failure to use forfeited contributions to pay administrative costs is always a violation of ERISA. Defendants HP Inc. ("HP") and the HP Inc. Plan Committee ("Committee") disagree and have moved to dismiss the Complaint. ECF No. 25 ("Mot."). Plaintiff opposes the motion. ECF No. 34 ("Opp."). Defendants filed a reply. ECF No. 35 ("Reply"). The Court held a hearing on the motion on May 9, 2024. ECF No. 44.

For the reasons stated below, the Court GRANTS the motion to dismiss with LEAVE TO AMEND.

**I.  BACKGROUND**

HP is the sponsor and administrator of a 401(k) plan ("Plan"). ECF No. 1 ("Compl") ¶ 6. The Committee was created by HP to assist in managing the Plan and was delegated authority to, among other things, direct the trustee with respect to the crediting and distribution of Plan assets.

*Id.* ¶ 7. The Plan is a defined contribution, individual account, employee benefit plan under 29 U.S.C. § 1002(2)(A) and 1002(34). *Id.* ¶ 4. Under ERISA, an individual account or defined benefit plan "provides for an individual account for each participant and for benefits based solely upon the amount contributed to the participant's account, and any income, expenses, gains and losses, and any forfeitures of accounts of other participants which may be allocated to such participant's account." 29 U.S.C.A. § 1002(34); *see also* Compl. ¶ 13. The Plan is funded by voluntary deferrals, which are withheld from a participant's wages, and HP's matching contributions, both of which are deposited into Plan's trust fund. Compl. ¶ 14. HP provides a matching contribution of 100% of the first 4% of eligible earnings a participant contributes each pay period. *Id.* ¶ 15; ECF No. 25-1 ("Plan") § 5(d). The expenses for administering the Plan are paid directly by the Plan, with each participant's account charged a fixed amount of $34 per year for recordkeeping services. *Id.* ¶ 19; *see also* Plan § 17(b).

HP's contributions are subject to a three-year cliff vesting schedule, in which a participant who stays employed by HP for three years becomes 100% vested in employer contributions in the participant's account. Compl. ¶ 18; Plan § 11(c). When a participant has a break in service prior to full vesting of HP's matching contributions, the participant forfeits the balance of HP's unvested matching contributions in the participant's individual account. Compl. ¶ 21; Plan § 11(f). Defendants have discretionary authority and control over how forfeited matching contributions are used, and the Plan provides that forfeited amounts may be used to "reduce employer contributions, to restore benefits previously forfeited, to pay Plan expenses, or for any other permitted use." Plan § 11(h); Compl. ¶¶ 22–23. Plaintiffs allege that Defendants have used forfeited matching contributions "solely to reduce Company contributions to the Plan." Compl. ¶ 24.

On November 14, 2023, Plaintiff initiated this lawsuit, seeking to represent a class of participants and beneficiaries of the Plan in challenging Defendants' use of forfeited amounts from 2019 to 2023. *See* Compl. ¶¶ 25–29, 32. Plaintiff brings six claims under ERISA: (1) breach of the fiduciary duty of loyalty, 29 U.S.C. § 1104(a)(1)(A); (2) breach of the fiduciary duty of prudence, 29 U.S.C. § 1104(a)(1)(B); (3) breach of the anti-inurement provision, 29 U.S.C.

2

1  § 1103(c)(1); (4) prohibited transactions between the plan and a party in interest, 29 U.S.C.

2  § 1106(a)(1); (5) prohibited transactions by the fiduciary dealing in assets of the plan in its own

3  interest, 29 U.S.C. § 1106(b)(1); and (6) failure to monitor fiduciaries.  Compl ¶¶ 36–71.

## II. LEGAL STANDARD

"A Motion to Dismiss under Federal Rule of Civil Procedure 12(b)(6) for failure to state a claim upon which relief can be granted 'tests the legal sufficiency of a claim.'" *Conservation Force v. Salazar*, 646 F.3d 1240, 1241–42 (9th Cir. 2011) (quoting *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001)).  When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff.  *Reese v. BP Exploration (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011).  However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences."  *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted).  While a complaint need not contain detailed factual allegations, it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"  *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).  A claim is facially plausible when it "allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."  *Id.*

In deciding whether to grant leave to amend, the Court must consider the factors set forth by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003).  A district court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present: (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment.  *Eminence Capital*, 316 F.3d at 1052.  "[I]t is the consideration of prejudice to the opposing party that carries the greatest weight."  *Id.*  However, a strong showing with respect to one of the other factors may warrant denial of leave to amend.  *Id.*

3

### III. REQUEST FOR JUDICIAL NOTICE

A court generally cannot consider materials outside the pleadings on a motion to dismiss for failure to state a claim. *See* Fed. R. Civ. P. 12(b)(6). A court may, however, consider items of which it can take judicial notice without converting the motion to dismiss into one for summary judgment. *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994). A court may take judicial notice of facts "not subject to reasonable dispute" because they are either "(1) generally known within the territorial jurisdiction of the trial court or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201. A court may additionally take judicial notice of "'matters of public record' without converting a Motion to Dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th Cir. 2001) (quoting *MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir. 1986)). Under the incorporation by reference doctrine, courts may consider documents "whose contents are alleged in a complaint and whose authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading." *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v. Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

Plaintiff requests that the Court take judicial notice of certain excerpts from the Plan's Form 5500 filings with the Department of Labor for plan years 2018 through 2022 and a brief filed by the Department of Labor in support of a motion for partial summary judgment in *Acosta v. Allen*, 3:17-cv-784-CHB (W.D. Ky.). *See* Opp. at 1–2; ECF Nos. 34-1, 34-2, 34-3, 34-4, 34-5 (Forms 5500); ECF No. 34-6 (DOL's brief). Defendants have not objected to Plaintiff's request for judicial notice. The Court takes judicial notice of the Plan's Form 5500 filings because they are matters of public record not subject to reasonable dispute and of which courts in this district routinely take judicial notice. *See Tobias v. NVIDIA Corp.*, No. 20-CV-06081-LHK, 2021 WL 4148706, at *5 (N.D. Cal. Sept. 13, 2021). The Court also takes judicial notice of DOL's brief in *Acosta* because it is a matter of public record not subject to reasonable dispute. *See Plastic Surgery Ctr., P.A. v. Aetna Life Ins. Co.*, 967 F.3d 218, 237 n.23 (3d Cir. 2020) (taking judicial notice of a DOL brief in a different case). The Court does not take notice of the truth of any of the

facts asserted in these documents. *See City of Sunrise Firefighters' Pension Fund v. Oracle Corp.*, No. 18-cv-04844-BLF, 2019 WL 6877195, at *23 (N.D. Cal. Dec. 17, 2019). Accordingly, Plaintiff's request for judicial notice is GRANTED.

Defendants note that the Court may consider the HP Inc. 401(k) Plan, Amended and Restated as of January 1, 2017, under the incorporation by reference doctrine. *See* Mot. at 4 n.1; ECF No. 25-1. The Court will consider this document as incorporated by reference in the complaint because it forms the basis of Plaintiff's claims, and no party contests its authenticity. *B.R. v. Beacon Health Options*, No. 16-CV-04576-MEJ, 2017 WL 2351973, at *3 (N.D. Cal. May 31, 2017) (considering, as incorporated by reference, a document describing an employee welfare benefit plan's terms because "Plaintiffs' claim is predicated entirely on the terms and benefits of the SAG Plan").

## IV. DISCUSSION

### A. Whether Plaintiff's Claims Are Foreclosed by Settled Law (All Claims)

Defendants argue that settled law expressly allows the use of forfeited amounts to reduce employer contributions. Mot. at 5–7. Defendants point to two Treasury regulations that they argue foreclose Plaintiff's theory of liability. First, 26 C.F.R. § 1.401-7(a) provides:

> In the case of a trust forming a part of a qualified pension plan, the plan must expressly provide that *forfeitures arising from severance of employment, death, or for any other reason, must not be applied to increase the benefits any employee would otherwise receive under the plan* at any time prior to the termination of the plan or the complete discontinuance of employer contributions thereunder. *The amounts so forfeited must be used as soon as possible to reduce the employer's contributions under the plan.*

26 C.F.R. § 1.401-7(a) (emphasis added). Second, the Treasury Department has proposed a new regulation for forfeitures in qualified retirement plans, including defined contribution plans. *See* Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. 12282-01 (proposed Feb. 27, 2023). In it, the Treasury Department explains:

> the proposed regulation would clarify that forfeitures arising in any defined contribution plan (including in a money purchase pension plan) may be used for one or more of the following purposes, as specified in the plan: (1) to pay plan administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase

5

benefits in other participants' accounts in accordance with plan terms. *Id.* at 12283. Defendants also argue that Plaintiff's theory is implausible because it relies on a false premise that HP receives a windfall from forfeited amounts and it would require that plan expenses are always paid before reducing employer contributions. Mot. at 7–8. Plaintiff argues that neither the current Treasury regulation nor the proposed Treasury regulation that Defendants cite are applicable to the Plan. Opp. at 4–8.

Plaintiff is correct that 26 C.F.R. § 1.401-7(a) does not apply to the Plan. The Plan is a stock bonus plan, which is a type of defined contribution pension plan under ERISA. Plan § 1 (noting that the Plan "is intended to qualify as a stock bonus plan under section 401(a) of [ERISA]"); *Finnerty v. Stiefel Lab'ys, Inc.*, 756 F.3d 1310, 1323 (11th Cir. 2014) ("[S]tock bonus plans are considered defined contribution pension plans."). Contrary to Defendants' assertion, 26 C.F.R. § 1.401-7(a) does not apply to stock bonus plans, a point that the Treasury Department has made clear in a subsequent revenue ruling. *See* Rev. Rul. 71-313, 1971-2 C.B. 203 (1971) (noting that 26 U.S.C. § 401(a)(8) and 26 C.F.R. § 1.401-7 "do[] not extend to profit-sharing and stock bonus plans"). Similarly, the proposed regulation on the use of forfeitures does not foreclose Plaintiff's theory of liability because it is at best persuasive authority. *Tedori v. United States*, 211 F.3d 488, 492 (9th Cir. 2000), *as amended* (May 18, 2000) ("[P]roposed regulations carry no more weight than a position advanced on brief." (quoting *Estate of Howard v. Commissioner*, 910 F.2d 634, 637 n.1 (9th Cir. 1990) (Rymer, J., dissenting))). The proposed regulation applies only to plan years beginning on or after January 1, 2024, and Plaintiff challenges the use of forfeitures from 2019 to 2023. *See* Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. at 12284; Opp. at 7; Compl ¶¶ 25–29. Because neither 26 C.F.R. § 1.401-7(a) nor the proposed Treasury regulation apply to the Plan, neither authority outright forecloses Plaintiff's theory of liability under ERISA.

Although neither authority forecloses Plaintiff's theory as a matter of law, the Court agrees with Defendants that these authorities may be considered as persuasive authority in evaluating the plausibility of Plaintiff's claims. *See* Mot. at 7–8; Reply at 2–3. The Court addresses this point further in Part IV.C, *infra.*

### B. Whether Defendants Acted as Fiduciaries (All Claims)

Defendants argue that Plaintiff has failed to meet the threshold requirement to allege that Defendants were acting as fiduciaries in deciding whether to allocate forfeited amounts to reduce employer contributions as opposed to paying Plan expenses because such decisions are settlor, as opposed to fiduciary, duties. Mot. at 8–10. Plaintiff argues that Defendants were acting as fiduciaries, rather than settlors, because the allocation of forfeited amounts is an administrative decision that falls outside of typical design-related settlor functions and Defendants exercised discretion within the preexisting design of the Plan. Opp. at 9–13.

"In every case charging breach of ERISA fiduciary duty, then, the threshold question is . . . whether [the person employed to provide services under a plan] was acting as a fiduciary (that is, was performing a fiduciary function) when taking the action subject to complaint." *Pegram v. Herdrich*, 530 U.S. 211, 226 (2000). This requirement is rooted in ERISA's definition of a fiduciary. *See Lockheed Corp. v. Spink*, 517 U.S. 882, 890 (1996). ERISA states:

> a person is a fiduciary with respect to a plan to the extent (i) he exercises any discretionary authority or discretionary control respecting management of such plan or exercises any authority or control respecting management or disposition of its assets, (ii) he renders investment advice for a fee or other compensation, direct or indirect, with respect to any moneys or other property of such plan, or has any authority or responsibility to do so, or (iii) he has any discretionary authority or discretionary responsibility in the administration of such plan.

29 U.S.C. § 1002(21)(A). In defining the scope of fiduciary duties under ERISA, courts have drawn a distinction between actions taken as a fiduciary and actions taken as a settlor. Fiduciary duties "consist of such actions as the administration of the plan's assets." *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 444 (1999); *see also Coulter v. Morgan Stanley & Co. Inc.*, 753 F.3d 361, 367 (2d Cir. 2014) ("Fiduciary functions include, for instance 'the common transactions in dealing with a pool of assets: selecting investments, exchanging one instrument or asset for another, and so on.'" (quoting *Harris Trust & Sav. Bank v. John Hancock Mut. Life Ins. Co.*, 302 F.3d 18, 28 (2d Cir.2002))). Settlor duties include decisions "regarding the form or structure of the Plan such as who is entitled to receive Plan benefits and in what amounts, or how such benefits are calculated." *Hughes Aircraft*, 525 U.S. at 444; *see also Coulter*, 753 F.3d at 367 ("'Settlor'

7

1   functions, in contrast, include conduct such as establishing, funding, amending, or terminating a
2   plan."); *Spink*, 517 U.S. at 890 (noting that fiduciary functions do not include plan design).

3       The Court finds that the decision to allocate forfeited amounts is a fiduciary, as opposed to
4   a settlor, function. Defendants are correct that the decision to include a Plan term stating that
5   forfeited amounts may be used to reduce employer contributions, to restore benefits previously
6   forfeited, or to pay Plan expenses is a settlor decision because it is a design decision. *See* Plan
7   § 11(h); Mot. at 8; *Hughes Aircraft*, 525 U.S. at 444. However, Plaintiff's challenge is not to
8   § 11(h) of the Plan, but to Defendants' selection of one of the options under § 11(h). This is
9   confirmed by the language of the Complaint, which states that the alleged breach of fiduciary duty
10  was in "choosing to utilize forfeited funds in the Plan for the benefit of the Company rather than
11  solely in the interest of the participants and beneficiaries." Compl. ¶ 38; *see also* ¶ 44 (similar).
12  Understood in this way, Plaintiff attacks not the *decision* to include § 11(h) as a Plan term, but
13  Defendants' *implementation* of that decision—that is, Defendants exercised discretion and control
14  over Plan assets and thus were making decisions of Plan administration rather than Plan design.
15  *Waller v. Blue Cross of California*, 32 F.3d 1337, 1342 (9th Cir. 1994) (noting that the challenge
16  to the implementation of a plan design decision falls within fiduciary duties under ERISA).
17  Accordingly, Plaintiff has met the threshold requirement of alleging that Defendants acted as
18  fiduciaries when they determined how to allocate forfeited amounts.

19      **C.**    **Breach of Fiduciary Duties (Claims 1 and 2)**
20      Defendants argue that they have not breached any fiduciary duties because they acted in
21  compliance with the Plan document and consistently with Treasury regulations. Mot. at 10–12.
22  Plaintiff argues that compliance with Treasury regulations and Plan terms is not a defense to an
23  ERISA claim because the Treasury regulations do not apply to ERISA and compliance with Plan
24  terms does not permit fiduciaries to act in a way that contravenes ERISA. Opp. at 14–17.

25      "ERISA is . . . a 'comprehensive and reticulated statute,' the product of a decade of
26  congressional study of the Nation's private employee benefit system." *Mertens v. Hewitt Assocs.*,
27  508 U.S. 248, 251 (1993) (quoting *Nachman Corp. v. Pension Benefit Guar. Corp.*, 446 U.S. 359,
28  361 (1980)). "Nothing in ERISA requires employers to establish employee benefits plans. Nor

8

1  does ERISA mandate what kind of benefits employers must provide if they choose to have such a
2  plan." *Spink*, 517 U.S. at 887.  Instead, the purpose of ERISA is "to ensure that employees will
3  not be left empty-handed once employers have guaranteed them certain benefits." *Id.* "ERISA
4  does no more than protect the benefits which are due to an employee under a plan." *Wright*, 360
5  F.3d at 1100 (quoting *Bennett v. Conrail Matched Sav. Plan Admin. Comm.*, 168 F.3d 671, 677
6  (3d Cir.1999)).  To protect the benefits due to employees under a plan, ERISA requires a fiduciary
7  to "discharge his duties with respect to a plan solely in the interest of the participants and
8  beneficiaries." 29 U.S.C. § 1104(a)(1).  The duty of loyalty requires a fiduciary to act "for the
9  exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and
10 (ii) defraying reasonable expenses of administering the plan." *Id.* § 1104(a)(1)(A).  The duty of
11 prudence requires a fiduciary to act "with the care, skill, prudence, and diligence under the
12 circumstances then prevailing that a prudent man acting in a like capacity and familiar with such
13 matters would use in the conduct of an enterprise of a like character and with like aims." *Id.*
14 § 1104(a)(1)(B).  A fiduciary is also required to act "in accordance with the documents and
15 instruments governing the plan insofar as such documents and instruments are consistent with the
16 provisions of this subchapter and subchapter III." *Id.* § 1104(a)(1)(D).

17 "ERISA requires fiduciaries to comply with a plan as written unless it is inconsistent with
18 ERISA." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004); *see also*
19 *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S. 409, 421 (2014) ("[Section 1104(a)(1)(D)] makes
20 clear that the duty of prudence trumps the instructions of a plan document.").  The parties appear
21 to agree that, in allocating forfeited amounts to reduce employer contributions, Defendants acted
22 consistent with § 11(h) of the Plan.  However, the parties dispute whether the decision to allocate
23 forfeited amounts to reduce employer contributions rather than to pay administrative costs is
24 contrary to the fiduciary duties of loyalty and prudence under ERISA.  Plaintiff advances a novel
25 legal theory under which it is a breach of fiduciary duty to allocate forfeited amounts to reduce
26 employer contributions rather than to pay administrative costs.  To date, there is no binding
27 authority that addresses this theory, and the Court is aware of only one other court that has
28 addressed a theory similar to Plaintiff's.  *See Perez-Cruet v. Qualcomm Inc.*, No. 23-CV-1890-

BEN (MMP), 2024 WL 2702207, at *2 (S.D. Cal. May 24, 2024).[1]

The Court finds that Plaintiff's theory of liability has broad reach, and it is the theory's breadth that makes it implausible. Plaintiff alleges that Defendants breached their fiduciary duties of loyalty and prudence when they chose to allocate forfeited amounts to reduce employer contributions rather than to pay administrative expenses. *See* Compl. ¶¶ 38–39, 44–46. The import of these allegations is that, if given the option between using forfeited funds to pay administrative costs or to reduce employer contributions, a fiduciary is *always* required to choose to pay administrative costs. But the flaw in such a theory is that it is not limited to any particular circumstances that may be present in this case. The Supreme Court has emphasized that "the content of the duty of prudence turns on 'the circumstances . . . prevailing' at the time the fiduciary acts, the appropriate inquiry will necessarily be context specific." *See Dudenhoeffer*, 573 U.S. at 425 (internal citation omitted) (quoting 29 U.S.C. § 1104(a)(1)(B)). In *Dudenhoeffer*, the Supreme Court held that there is no presumption of prudence in favor of employee stock ownership plan ("ESOP") fiduciaries. *Id.* at 418–19. In remanding to the Court of Appeals, the Supreme Court instructed the Court of Appeals to apply the pleading standard of *Twombly* and *Iqbal* and highlighted certain considerations. *Id.* at 426. In particular, the Supreme Court rejected as implausible the plaintiff's broad allegation that "a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock," but the Court left open the possibility that the plaintiff might "point[] to a special circumstance affecting the reliability of the market price" that might make the fiduciary's actions imprudent. *Id.* at 427. Plaintiff's theory is in tension with the Supreme Court's analysis in *Dudenhoeffer*, which emphasizes that the plausibility of allegations of breach of fiduciary duty should consider the context and circumstances of the fiduciary's actions. As pled, Plaintiff's theory would require any fiduciary to use forfeited amounts to pay administrative costs regardless of any such context or

---

[1] The *Perez-Cruet* court's analysis of whether a decision to reduce employer contributions rather than pay administrative costs is a violation of the duties of loyalty and prudence is conclusory and does not directly address many of the points made by Defendants in the motion to dismiss. 2024 WL 2702207, at *2–3. Accordingly, the Court does not find *Perez-Cruet* persuasive in deciding the motion to dismiss in this case.

1 circumstances. This broad allegation is implausible because it would improperly extend ERISA
2 beyond its bounds and would be contrary the settled understanding of Congress and the Treasury
3 Department regarding defined contribution plans like the one at issue in this case.
4       First, Plaintiff's theory of liability would improperly extend the protection of ERISA
5 beyond its statutory framework. As stated above, ERISA does not mandate what benefits an
6 employer must provide under a plan and does no more than protect the benefits which are due to
7 an employee under a plan. *See Spink*, 517 U.S. at 887; *Wright*, 360 F.3d at 1100. Because
8 Plaintiff's claims are so broad, he is effectively arguing that the fiduciary duties of loyalty and
9 prudence create a benefit: the payment of his administrative costs. However, the Plan does not
10 provide any such benefit, and Plaintiff does not allege any facts showing that he is entitled to such
11 a benefit. *Cf.* Plan § 17(b). To the extent he relies on the fiduciary duty provisions of ERISA to
12 create an entitlement to administrative costs, consistent with the statutory framework, those
13 provisions "create[] no exclusive duty of maximizing pecuniary benefits. Under ERISA the
14 fiduciaries' duties are found largely in the terms of the plan itself." *Foltz v. U.S. News & World*
15 *Rep., Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989); *see also US Airways, Inc. v. McCutchen*, 569 U.S.
16 88, 101 (2013) (emphasizing that ERISA's purpose is to "protect contractually defined benefits"
17 and the statutory scheme "is built around reliance on the face of written plan documents" (first
18 quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 148 (1985); then quoting *Curtiss-Wright*
19 *Corp. v. Schoonejongen*, 514 U.S. 73, 83 (1995))); *Collins v. Pension & Ins. Comm. of S. Cal.*
20 *Rock Prod. & Ready Mixed Concrete Associations*, 144 F.3d 1279, 1282 (9th Cir. 1998) ("The
21 duty to act in accordance with plan document does not . . . require a fiduciary to resolve every
22 issue of interpretation in favor of plan beneficiaries."). Plaintiff's claim is that the fiduciary duty
23 provisions create an unqualified duty to pay administrative costs—that is, to maximize pecuniary
24 benefits in favor of plan beneficiaries. But it is neither disloyal nor imprudent under ERISA to fail
25 to maximize pecuniary benefits. *Foltz*, 865 F.2d at 373.
26       Second, Plaintiff's theory of liability is contrary to the settled understanding of Congress
27 and the Treasury Department regarding defined contribution plans. The Treasury Department and
28 Congress have long understood that forfeitures in defined contribution plans "could be reallocated

11

to the remaining participants under a nondiscriminatory formula, used to reduce future employer contributions, or used to offset administrative expenses of the plan." Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg. at 12283. The Conference Report accompanying the Tax Reform Act of 1986 "noted that changes made by [the Act] provided uniform rules regarding the use of forfeitures under any defined contribution plan" under which forfeitures could be reallocated to the accounts of other participants, used to reduce future employer contributions, or to reduce administrative costs. *Id.* (citing H.R. Rep. 99-841, at II-442 (1986)). Consistent with these uniform rules and the historical understanding of defined contribution plans, the Treasury Department has proposed regulations that "would clarify that forfeitures arising in any defined contribution plan" may be used for any one of the following: "(1) to pay administrative expenses, (2) to reduce employer contributions under the plan, or (3) to increase benefits in other participants' accounts in accordance with plan terms." *Id.* If Plaintiff's theory is correct, this provision of the Treasury regulations is contrary to ERISA and option (2), and potentially option (3), are a nullity. The Court does not understand the general provisions of the fiduciary duty provision of ERISA to not only create a benefit to which Plaintiff is not entitled but also to abrogate Treasury regulations and settled rules regarding the use of forfeitures in defined contribution plans. *Cf. Mertens*, 508 U.S. at 261 (noting that a statute's basic purpose does not overcome text regarding the specific issue under consideration, especially when considering legislation such as ERISA, "an enormously complex and detailed statute that resolved innumerable disputes between powerful competing interests—not all in favor of potential plaintiffs"). Plaintiff does not point to any intervening changes in the law or any particular facts that would justify departing from over 38 years of settled rules regarding defined contribution plans.

Thus, Plaintiff's claim at its current breadth is implausible. But Plaintiff might be able to plausibly allege disloyalty or imprudence based on more particularized facts or special circumstances present in this case. *See Dudenhoeffer*, 573 U.S. at 427–29 (noting that whether a plaintiff could plausibly allege imprudence might turn on whether the plaintiff could point to "a special circumstance affecting the reliability of the market price"). Accordingly, the Court will

12

1  DISMISS Plaintiff's fiduciary duty claims with leave to amend to permit Plaintiff to narrow these
2  claims.

### D. Violation of ERISA's Anti-Inurement Provision (Claim 3)

Defendants argue that allocation of forfeited amounts to reduce future employer contributions does not violate ERISA's anti-inurement provision because the forfeited amounts remain Plan assets and are used to pay obligations to Plan participants. Mot. at 12–14. Plaintiff argues that the use of forfeited amounts to reduce future employer contributions is akin to using plan assets to forgive an employer's debts, which is a violation of ERISA's anti-inurement provision. Opp. at 19–22.

ERISA's anti-inurement provision states that, with enumerated exceptions, "the assets of a plan shall never inure to the benefit of any employer and shall be held for the exclusive purposes of providing benefits to participants in the plan and their beneficiaries and defraying reasonable expenses of administering the plan." 29 U.S.C. § 1103(c)(1). The Supreme Court has interpreted this language as "focus[ing] exclusively on whether fund assets were used to pay pension benefits to plan participants." *Hughes Aircraft*, 525 U.S. at 442; *see also Raymond B. Yates, M.D., P.C. Profit Sharing Plan v. Hendon*, 541 U.S. 1, 22 (2004) ("The provision demands only that plan assets be held for supplying benefits to plan participants."). Allegations of "indirect" or "incidental" benefits to an employer are insufficient to state a claim under the anti-inurement provision. *See Krohnengold v. New York Life Ins. Co.*, No. 21-CV-1778 (JMF), 2022 WL 3227812, at *10 (S.D.N.Y. Aug. 10, 2022); *Hughes Aircraft*, 525 U.S. at 445 (noting that receipt of "incidental" benefits to an employer do not constitute a breach of the anti-inurement provision); *Holliday v. Xerox Corp.*, 732 F.2d 548, 551 (6th Cir. 1984) ("[The anti-inurement provision] cannot be read as a prohibition against any decisions of an employer with respect to a pension plan which have the obvious primary purpose and effect of benefitting the employees, and in addition the incidental side effect of being prudent from the employer's economic perspective."). In addition, claims under the anti-inurement provision usually require reversion or diversion of plan assets to the sponsor. *See Aldridge v. Lily-Tulip, Inc. Salary Ret. Plan Benefits Comm.*, 953 F.2d 587, 592 n.6 (11th Cir. 1992) ("The [anti-inurement provision] can only be violated if there has

1    been a removal of plan assets for the benefit of the plan sponsor or anyone other than the plan
2    participants."); *Maez v. Mountain States Tel. & Tel., Inc.*, 54 F.3d 1488, 1506 (10th Cir. 1995)
3    (finding that a plaintiff failed to state a claim under the anti-inurement provision where "no such
4    reversion, diversion, or any other sort of payment of surplus assets . . . is alleged").

5          The Court finds instructive cases that address the disposition of surplus plan assets. For
6    example, in *Hughes Aircraft*, the Supreme Court held that a plan sponsor did not violate the anti-
7    inurement provision when the plan sponsor used surplus plan assets from a contributory structure
8    to add a noncontributory structure to a plan because the sponsor was using plan assets "for the sole
9    purpose of paying pension benefits to Plan participants" and "satisfied its continuing obligation
10   under the provisions of the Plan and ERISA to assure that the Plan was adequately funded."
11   *Hughes Aircraft*, 525 U.S. at 442. Similarly, in *Flanigan v. General Electric*, the Second Circuit
12   held that the transfer of pension surplus from GE's plan to Lockheed Martin's plan during an
13   acquisition of GE did not violate ERISA's anti-inurement provision. *Flanigan v. Gen. Elec. Co.*,
14   242 F.3d 78, 88 (2d Cir. 2001). The Second Circuit noted that "all of the pension surplus that GE
15   transferred to Lockheed was used to fund pension benefits. Any benefit received by GE
16   [including a higher sale price and an advantage in dealing with government contract claims] was,
17   at most, indirect." *Id.* at 87–88. Finally, in *Maez v. Mountain States Telephone and Telephone*,
18   the defendants used surplus plan assets to fund a second early retirement offer, which had the
19   effect of furthering the defendants' desire to reduce the workforce, but the plaintiffs alleged that
20   the surplus funds should have been used to benefit them. *Maez*, 54 F.3d at 1506. The Tenth
21   Circuit found that the plaintiffs failed to state a claim for violation of ERISA's anti-inurement
22   provision because they did not allege any "reversion, diversion, or any other sort of payment of
23   surplus assets to [the employer]" and the surplus funds "remained with the Pension Plan and were
24   still held in trust for participants in the plan and their beneficiaries." *Id.*

25         The Court acknowledges that the *Perez-Cruet* court found *Hughes Aircraft* distinguishable
26   because *Hughes Aircraft* considered a defined benefit plan, which does not give participants any
27   entitlement to a plan's surplus funds. *See Perez-Cruet*, 2024 WL 2702207, at *4. The *Perez-
28   Cruet* court appears to have assumed that, because it was considering a defined contribution plan

14

in which participants "have a right to contributions," a decision regarding the use of surplus funds is inapplicable. *See id.* However, "a right to contributions" is not an entitlement to forfeited amounts. Defined contribution plans entitle a participant to "whatever assets are dedicated to his individual account," which provides for "benefits based solely upon the amount contributed to the participant's account." *Hughes Aircraft*, 525 U.S. at 439. This entitlement does not include forfeited amounts from the accounts of other participants unless they are allocated to the participant's account. *See* 29 U.S.C. § 1002(35) (defining "defined contribution plan" to provide "for benefits based solely upon the amount contributed to the participant's account . . . and any forfeitures of accounts of other participants that *may* be allocated to such participant's account" (emphasis added)). Moreover, Plaintiff has not pointed the Court to any provision of the Plan that would entitle him to forfeited amounts. The forfeited amounts in this case, despite being part of a defined contribution plan, are similar to surplus funds in a defined benefit plan because, before reallocation, they are not assets to which any participant is entitled. Thus, the Court finds that the cases considering the treatment of surplus amounts are persuasive.

Consistent with *Hughes Aircraft*, *Flanigan*, and *Maez*, Plaintiff's factual allegations show that the forfeited amounts remain part of the Plan's trust fund and are used to benefit Plan beneficiaries. The Complaint alleges that the forfeited amounts remain Plan assets and that Defendants used the forfeited amounts "as a substitute for the Company's own matching contributions to the Plan." Compl. ¶ 53. Put differently, when an employee leaves HP before the employee's matching contributions are fully vested, Defendants elect to use the forfeited amounts to supply HP's matching contributions for other Plan beneficiaries. This is not a violation of the anti-inurement provision because the forfeited amounts are plan assets which do not leave the Plan trust fund and are used to pay pension benefits to Plan participants. *Hughes Aircraft*, 525 U.S. at 442; *Maez*, 54 F.3d at 1506. The fact that HP benefits through the reduction in its future matching contributions does not make the use of forfeited amounts in this way a violation of the anti-inurement provision—the benefit that HP receives is incidental to the payment of pension benefits. *See Holliday*, 732 F.2d at 551; *Flanigan*, 242 F.3d at 88.

Plaintiff compares this case to cases in which plan assets are used to forgive an employer's

15

debts to the plan. *See* Opp. at 19–21. For example, in *Holland v. Arch Coal*, the D.C. Circuit held that the Coal Industry Retiree Health Benefit Act ("Coal Act") required Arch Coal to provide security to a pension benefit plan after a successor to the plan filed for bankruptcy. *Holland as Tr. of UMWA 1992 Benefit Plan v. Arch Coal, Inc.*, 947 F.3d 812, 814–15, 819 (D.C. Cir. 2020). Arch Coal argued that the successor's letter of credit, which was previously used to provide security, should be used to reduce Arch Coal's obligations under the Coal Act. *Id.* at 821. The D.C. Circuit rejected this argument, finding that the Plan had already drawn down on the letter of credit such that it was no longer providing security and to dedicate the proceeds of the letter of credit to reduce Arch Coal's obligations "in this way would run afoul of the clear injunction in ERISA that the 'assets of a plan shall never inure to the benefit of any employer.'" *Id.* (quoting 29 U.S.C. § 1103(c)(1)). Similarly, in *Chao v. Malkani*, defendant plan fiduciaries stopped making annual contributions to the plan, demanded that plan assets be used to pay their administrative expenses, fired the third-party administrator after the third-party administrator refused to use plan assets to pay the defendants' administrative expenses, appointed one defendant trustee of the plan during the transition, and after a TRO was imposed, requested a large reimbursement from plan assets based on the argument that the plan was overfunded. *Chao v. Malkani*, 452 F.3d 290, 291–93 (4th Cir. 2006). The Fourth Circuit affirmed the district court's determination that the defendants breached their fiduciary duties, noting that "[w]hile one of their several dubious actions standing alone may have made the extraordinary remedy of removal a closer call, when their behavior is considered in the aggregate, it becomes evident that defendants abdicated their fiduciary obligations." *Id.* at 294. Relevant here, the Fourth Circuit found that the defendants' request for a reimbursement would have violated ERISA's anti-inurement provision because the defendants would have "[o]btain[ed] Plan assets for contributions made many years in the past." *Id.* at 297.

*Holland*, *Malkani*, and the other cases cited by Plaintiff are distinguishable from this case for the same reasons—those cases involved outstanding and unpaid amounts owed by the defendants. *See, e.g.*, *Brown v. Health Care & Ret. Corp. of Am.*, 25 F.3d 90, 93 (2d Cir. 1994) (rejecting a defendant's claim that mistaken overpayments may be used as a "setoff against a

16

fund's claim to collect *delinquent* payments" (emphasis added)). Plaintiff does not allege any facts that would make HP's future obligation in this case similar to the obligations owed in *Holland* and *Malkani* because Plaintiff has not alleged that HP owes any outstanding or unpaid amounts or that HP has otherwise failed to meet its obligations to provide matching contributions to the Plan. Moreover, Plaintiff's attempt to analogize HP's future obligation to provide matching benefits to a debt is based on a distinction between "new money" that HP contributes to the Plan as matching contributions and "old money" that HP has already contributed to the Plan that is without support in the terms of the Plan, the text of ERISA, or case law.

The Court finds that Plaintiff's claim that forfeited amounts inured to the benefit of HP is implausible. However, the Court finds that amendment may not be futile and will DISMISS Plaintiff's claim under the anti-inurement provision with leave to amend to allege further facts showing that forfeited amounts were reverted or diverted to HP and/or that forfeited amounts were used to offset outstanding and unpaid obligations.

### E. Prohibited Transactions (Claims 4 and 5)

Defendants argue that Plaintiff has failed to allege a prohibited transaction between the Plan and another party because the reallocation of forfeited amounts is neither prohibited nor a transaction. Mot. at 14–15. Plaintiff argues that the use of forfeited amounts as a substitute for HP's future contributions to the Plan is a transaction. Opp. at 22–24. Plaintiff also argues that the provision prohibiting self-dealing does not require a transaction. *Id.* at 24–25.

ERISA provides that a fiduciary

> shall not cause the plan to engage in a transaction, if he knows or should know that such transaction constitutes a direct or indirect--
> (A) sale or exchange, or leasing, of any property between the plan and a party in interest;
> (B) lending of money or other extension of credit between the plan and a party in interest;
> (C) furnishing of goods, services, or facilities between the plan and a party in interest;
> (D) transfer to, or use by or for the benefit of a party in interest, of any assets of the plan; or
> (E) acquisition, on behalf of the plan, of any employer security or employer real property in violation of section 1107(a) of this title.

29 U.S.C. § 1106(a)(1). Similarly, ERISA prohibits certain "[t]ransactions between plan and

17

fiduciary," including where a fiduciary "deal[s] with assets of the plan in his own interest or for his own account. *Id.* § 1106(b)(1). In order to allege a violation of § 1106(a) or (b), the plaintiff must allege an unlawful transaction. *See Spink*, 517 U.S. at 888; *Wright*, 360 F.3d at 1101 ("Plaintiffs fail to identify *any transaction* that falls within § 1106(a)(1) or (b)." (emphasis added)).

The Court finds that Plaintiff has failed to plausibly allege a prohibited transaction. The Supreme Court has held that the payment of benefits is not a "transaction" under the prohibited transactions provision. *See Spink*, 517 U.S. at 892–93. The Supreme Court noted that the types of transactions enumerated in § 1106(a)(1) "are commercial bargains that present a special risk of plan underfunding because they are struck with plan insiders, presumably not at arm's length." *Id.* at 893. The Court emphasized that these transactions "involve uses of plan assets that are potentially harmful to the plan." *Id.* Following this analysis, the Ninth Circuit has held that merely holding plan assets in employer stock is not a prohibited transaction under § 1106(a)(1) or (b)(1) because "[i]t was merely a lawful decision to remain in full compliance with the explicit language of the Plan's terms." *Wright*, 360 F.3d at 1101. Similarly, another court in this district has held that the use of funds available to satisfy one benefit to fund a different benefit that would have otherwise been funded by an additional "true up" from the plan sponsor is not a prohibited transaction in violation of § 1106(a)(1) or (b)(1). *Black v. Greater Bay Bancorp Exec. Supplemental Comp. Benefits Plan*, No. 16-CV-00486-EDL, 2017 WL 8948732, at *8–9 (N.D. Cal. Jan. 18, 2017); *see also Chao v. Hagemeyer N. Am., Inc.*, No. CV 2:06-01173-PMD, 2006 WL 8443663, at *6 (D.S.C. Oct. 20, 2006) (holding that "exchanges or 'reallocations' between accounts of plan participants" that constituted "a redistribution within the plan of the plan assets" was not a prohibited transaction). As discussed above, Plaintiff's allegations show that forfeited amounts remain Plan assets and are merely reallocated to provide pension benefits to other employees through use as matching contributions. But this is not a prohibited transaction. *See Hagemeyer*, 2006 WL 8443663, at *6. In addition, the fact that reallocation of the forfeited amounts will reduce the amount that HP contributes as matching contributions in the future does not make this a transaction for purposes of § 1106. *See Black*, 2017 WL 8948732, at *8–9

18

(holding that the use of plan assets to fund a benefit that the employer might otherwise fund was not a prohibited transaction). Moreover, this is not similar to the types of commercial transactions contemplated by Congress because Plaintiff does not allege any facts showing that the reallocation of forfeited amounts in this way put the Plan at "a special risk of plan underfunding." *Spink*, 517 U.S. at 893. As noted above, Plaintiff does not allege that HP has failed to meet its obligations to contribute to the Plan.

Plaintiff's arguments to the contrary are unavailing. First, to the extent that Plaintiff relies on *Commissioner v. Keystone Consolidated Industries*, that case is not applicable here because it dealt with a traditional commercial transaction. *See* Comm'r v. Keystone Consol. Indus., Inc., 508 U.S. 152, 158–59 (1993). The defendant in *Keystone* contributed truck terminals and other real property to satisfy its funding obligations for a plan. *See id.* The Supreme Court held that this was a "sale or exchange" under the Internal Revenue Code because it involved "the transfer of property in satisfaction of a debt." *Id.* at 159. Second, although Plaintiff argues that § 1106(b)(1) does not require allegations of a transaction, this argument is contrary to binding Ninth Circuit precedent. *See Wright*, 360 F.3d at 1101 (finding that a failure to identify a transaction required dismissal of a claim under § 1106(a)(1) *and* § 1106(b)).

The Court finds that Plaintiff's prohibited transaction claims are implausible because Plaintiff fails to allege a prohibited transaction. The Court will DISMISS Plaintiff's claims with leave to amend to allege more particular facts that might show a prohibited transaction.

### F.     Failure to Monitor (Claim 6)

Defendants argue that Plaintiff's failure to monitor claim is derivative of Plaintiff's other claims and should fail for the same reasons. Mot. at 15–16. Plaintiff argues that he has adequately alleged a plausible claim under the duty to monitor because he has alleged other plausible violations of ERISA. Opp. at 25. Because the Court finds that Plaintiff's allegations fail to state a claim for breach of fiduciary duties, a breach of the anti-inurement provision, or breach of the prohibited transaction provision, the Complaint also fails to state a claim for a failure to monitor. *See Bracalente v. Cisco Sys., Inc.*, No. 5:22-CV-04417-EJD, 2023 WL 5184138, at *6 (N.D. Cal. Aug. 11, 2023) (dismissing a failure to monitor claim where the plaintiffs failed to state

a claim for a breach of fiduciary duty).

## V. ORDER

For the foregoing reasons, IT IS HEREBY ORDERED that Defendants HP Inc. and the HP Inc. Plan Committee's motion to dismiss (ECF No. 25) is GRANTED WITH LEAVE TO AMEND. Plaintiff may file an amended complaint that addresses the deficiencies identified in this Order within 30 days of the date of this Order.

Dated: June 17, 2024

BETH LABSON FREEMAN
United States District Judge