**UNITED STATES DISTRICT COURT**

**NORTHERN DISTRICT OF CALIFORNIA**

**SAN JOSE DIVISION**

| | |
|---|---|
| PAUL HUTCHINS,<br><br>                Plaintiff,<br><br>    v.<br><br>HP INC., et al.,<br><br>                Defendants. | Case No. 5:23-cv-05875-BLF<br><br>**ORDER GRANTING MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION COMPLAINT**<br><br>[Re: ECF No. 59] |

This is Defendant HP Inc.'s ("HP") second effort to dismiss this putative class action regarding certain of its obligations under the Employee Retirement Income Security Act ("ERISA"). Plaintiff Paul Hutchins ("Plaintiff" or "Hutchins") alleges that HP breached its fiduciary duties and engaged in self-dealing in violation of ERISA when it decided to use 401(k) Plan "forfeitures" to reduce employer contributions rather than to pay administrative costs. ECF No. 56 ("FAC") ¶¶ 2–3. Following the Court's grant of HP's first motion to dismiss, Plaintiff filed a First Amended Class Action Complaint and HP moved once again for dismissal. ECF No. 59 ("Mot."). Plaintiff opposes the motion, ECF No. 61 ("Opp."), and Defendant filed a reply in support of the motion, ECF No. 62 ("Reply"). The Court held a hearing on December 19, 2024. ECF No. 65.

For the following reasons, the Court GRANTS the Motion to Dismiss Plaintiff's First Amended Class Action Complaint (ECF No. 59).

**I. BACKGROUND**

  **A. Factual Background**

HP Inc. ("HP") is an information technology company headquartered in Palo Alto,

1  California. FAC ¶ 7. Plaintiff is a former employee of HP and a participant in HP's 401(k) Plan
2  (the "Plan"). *Id.* ¶¶ 3, 10. The Plan is a defined contribution, individual account, employee
3  pension benefit plan under 29 U.S.C. §§ 1002(2)(A) and 1002(34). FAC ¶ 6.
4         The Plan is subject to the provisions of ERISA pursuant to 29 U.S.C. § 1003(a). FAC ¶ 6.
5  Under ERISA, an individual account or defined contribution plan "means a pension plan which
6  provides for an individual account for each participant and for benefits based solely upon the
7  amount contributed to the participant's account, and any income, expenses, gains and losses, and
8  any forfeitures of accounts of other participants which may be allocated to such participant's
9  account." 29 U.S.C. § 1002(34); *see also* FAC ¶ 13. The Plan is funded by wage withholdings
10 from Plan participants as well as matching contributions from HP, both of which are deposited
11 into a Plan trust fund. FAC ¶ 14. HP matches the first 4 percent of eligible earnings that a
12 participant contributes each pay period at 100 percent, and HP is required to pay all matching
13 contributions that have accrued through a given calendar year as soon as reasonably practicable
14 after the end of that calendar year. *Id.* ¶ 15. Plan expenses are paid from assets in the Plan and
15 charged to participants' accounts unless HP decides otherwise. *Id.* ¶ 20; Plan § 17(b).
16        HP's contributions are subject to a three-year cliff vesting schedule, in which a participant
17 who stays employed by HP for three years becomes 100 percent vested in employer contributions
18 in the participant's account. FAC ¶ 18. If a participant experiences a "break in service" prior to
19 this full vesting of HP's matching contributions, the participant forfeits the balance of HP's
20 unvested matching contributions in the individual's Plan account. *Id.* ¶ 19. HP then has control
21 over how those forfeited matching contributions are used, *id.*, with the Plan indicating that
22 forfeited amounts may be used to "reduce employer contributions, to restore benefits previously
23 forfeited, to pay Plan expenses, or for any other permitted use." Plan § 11(h); *see* FAC ¶ 22–23.
24 Unless HP allocates forfeitures to pay Plan expenses, those administrative expenses are charged to
25 Plan participants' accounts. FAC ¶ 20. Plaintiff alleges that, during the class period alleged in the
26 First Amended Class Action Complaint, each participant's account was charged "a fixed amount
27 of $34 per year for recordkeeping services." *Id.*
28

2

### B. Procedural Background

Plaintiff initiated this lawsuit on November 14, 2023. ECF No. 1 ("Compl."). Following a May 9, 2024 hearing, *see* ECF No. 44, the Court granted HP's motion to dismiss with leave to amend, ECF No. 53 ("MTD Order"). On July 17, 2024, Plaintiff filed a First Amended Class Action Complaint against Defendant HP Inc. and Does 1–10. ECF No. 56. In the First Amended Class Action Complaint, Plaintiff brings three claims under ERISA: (1) breach of the fiduciary duty of loyalty, 29 U.S.C. § 1104(a)(1)(A); (2) breach of the fiduciary duty of prudence, 29 U.S.C. § 1104(a)(1)(B); and (3) self-dealing, 29 U.S.C. § 1106(b)(1). FAC ¶¶ 44–62. Plaintiff seeks to represent a class of participants and beneficiaries of the Plan in challenging Defendants' use of the forfeited funds. *Id.* ¶¶ 33–43.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 12(b)(6), a court must dismiss a complaint if it fails to state a claim upon which relief can be granted. To survive a Rule 12(b)(6) motion, the plaintiff must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). A claim is facially plausible when the plaintiff pleads facts that allow the court to "draw the reasonable inference that the defendant is liable for the misconduct alleged." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citation omitted). There must be "more than a sheer possibility that a defendant has acted unlawfully." *Id.* While courts generally do not require "heightened fact pleading of specifics," a plaintiff must allege facts sufficient to "raise a right to relief above the speculative level." *See Twombly*, 550 U.S. at 555, 570.

When determining whether a claim has been stated, the Court accepts as true all well-pled factual allegations and construes them in the light most favorable to the plaintiff. *Reese v. BP Expl. (Alaska) Inc.*, 643 F.3d 681, 690 (9th Cir. 2011). However, the Court need not "accept as true allegations that contradict matters properly subject to judicial notice" or "allegations that are merely conclusory, unwarranted deductions of fact, or unreasonable inferences." *In re Gilead Scis. Sec. Litig.*, 536 F.3d 1049, 1055 (9th Cir. 2008) (internal quotation marks and citations omitted). On a motion to dismiss, the Court's review is limited to the face of the complaint and

3

1  matters judicially noticeable. *See MGIC Indem. Corp. v. Weisman*, 803 F.2d 500, 504 (9th Cir.
2  1986); *N. Star Int'l v. Ariz. Corp. Comm'n*, 720 F.2d 578, 581 (9th Cir. 1983).

3        In deciding whether to grant leave to amend, the Court must consider the factors set forth
4  by the Supreme Court in *Foman v. Davis*, 371 U.S. 178 (1962), and discussed at length by the
5  Ninth Circuit in *Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048 (9th Cir. 2003).  A district
6  court ordinarily must grant leave to amend unless one or more of the *Foman* factors is present:
7  (1) undue delay, (2) bad faith or dilatory motive, (3) repeated failure to cure deficiencies by
8  amendment, (4) undue prejudice to the opposing party, or (5) futility of amendment.  *Eminence*
9  *Capital*, 316 F.3d at 1051–52.  "[I]t is the consideration of prejudice to the opposing party that
10 carries the greatest weight." *Id.* at 1052.  However, a strong showing with respect to one of the
11 other factors may warrant denial of leave to amend.  *Id.*

## III. JUDICIAL NOTICE

13       A court generally cannot consider materials outside the pleadings on a motion to dismiss
14 for failure to state a claim.  *See* Fed. R. Civ. P. 12(b)(6).  A court may, however, consider items of
15 which it can take judicial notice without converting the motion to dismiss into one for summary
16 judgment.  *Barron v. Reich*, 13 F.3d 1370, 1377 (9th Cir. 1994).  A court may take judicial notice
17 of facts "not subject to reasonable dispute" because they either "(1) [are] generally known within
18 the trial court's territorial jurisdiction; or (2) can be accurately and readily determined from
19 sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b).  A court may
20 additionally take judicial notice of "'matters of public record' without converting a motion to
21 dismiss into a motion for summary judgment." *Lee v. City of Los Angeles*, 250 F.3d 668, 689 (9th
22 Cir. 2001) (quoting *MGIC Indem. Corp.*, 803 F.2d at 504).  Under the incorporation by reference
23 doctrine, courts may consider documents "whose contents are alleged in a complaint and whose
24 authenticity no party questions, but which are not physically attached to the [plaintiff's] pleading."
25 *In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d 970, 986 (9th Cir. 1999) (quoting *Branch v.*
26 *Tunnell*, 14 F.3d 449, 454 (9th Cir. 1994)) (alteration in original).

27       Once again, Plaintiff requests that the Court take judicial notice of certain excerpts from
28 the Plan's Form 5500 filings with the Department of Labor for plan years 2018 through 2022.  *See*

4

1  Opp. at 3 n.1; ECF Nos. 61-1, 61-2, 61-3, 61-4, 61-5 (Forms 5500).  For the same reasons stated in
2  the MTD Order—that they are matters of public record not subject to reasonable dispute and of
3  which courts in this district routinely take judicial notice—the Court again takes judicial notice of
4  the Plan's Form 5500 filings.  MTD Order at 4 (citing *Tobias v. NVIDIA Corp.*, No. 20-cv-06081,
5  2021 WL 4148706, at *5 (N.D. Cal. Sept. 13, 2021)).  The Court does not take notice of the truth
6  of any of the facts asserted in these documents.  *See City of Sunrise Firefighters' Pension Fund v.*
7  *Oracle Corp.*, No. 18-cv-04844, 2019 WL 6877195, at *23 (N.D. Cal. Dec. 17, 2019).
8  Accordingly, Plaintiff's request for judicial notice is GRANTED.
9        Likewise, Defendants again note that the Court may consider the HP Inc. 401(k) Plan, As
10  Amended and Restated January 1, 2017, under the incorporation by reference doctrine.  *See* Mot.
11  at 3 n.1.  The Court will consider this document as incorporated by reference into the First
12  Amended Class Action Complaint for the same reasons previously stated in the MTD Order: that
13  it forms the basis of Plaintiff's claims and no party contests its authenticity.  MTD Order at 5
14  (citing *B.R. v. Beacon Health Options*, No. 16-cv-04576, 2017 WL 2351973, at *3 (N.D. Cal. May
15  31, 2017)); *see In re Silicon Graphics Inc. Sec. Litig.*, 183 F.3d at 986.

## IV. DISCUSSION

17        The Court's Order on HP's earlier motion to dismiss resolved in Plaintiff's favor the
18  question of whether Plaintiff had adequately alleged that Defendant was acting as a fiduciary when
19  it allocated forfeited amounts, MTD Order at 7–8, and the Court does not revisit that ruling now.
20  This order is therefore focused only on whether Plaintiff has adequately alleged that HP breached
21  its fiduciary duties of loyalty and prudence, and whether Plaintiff has adequately alleged that HP
22  engaged in self-dealing.

### A. Defendant's Preliminary Arguments

24        Before addressing each of Plaintiff's claims directly, HP presents two overarching
25  arguments:  First, that Plaintiff is seeking a categorical increase in benefits provided under the
26  Plan, Mot. at 6–8; Reply at 3–4, and second, that Plaintiff's arguments ignore "decades of settled
27  law" allowing defined contribution plans to use forfeitures exactly as HP did, Mot. at 8–14; Reply
28  at 4–6.  Plaintiff disputes both arguments.  On the former, Plaintiff argues that he is not seeking

*greater* benefits than the Plan provides; to the contrary, he argues that HP selected a Plan structure that commits the decision of whether to use Plan assets to pay administrative expenses or reduce HP's contributions to the Plan administrator acting as a fiduciary, and he merely seeks to hold the administrator to its fiduciary obligations in making that determination. Opp. at 19–20. On the latter point, Plaintiff argues that HP's "asserted compliance with the Plan and 'settled law' does not establish" that HP fulfilled its fiduciary obligations. Opp. at 14.

The Court agrees with HP on both points. First, "[n]othing in ERISA requires employers to establish employee benefits plans," and ERISA does not specifically "mandate what kind of benefits employers must provide if they choose to have such a plan." *Lockheed Corp. v. Spink*, 517 U.S. 882, 887 (1996). Rather, ERISA "seek[s] to ensure that employees will not be left empty-handed once employers have guaranteed them certain benefits." *Id.*; *Hughes Aircraft Co. v. Jacobson*, 525 U.S. 432, 446 (1999). The Court acknowledges Plaintiff's argument that, in structuring the Plan as it did, HP assigned the decision of how reallocate forfeited contributions to the Plan administrator as fiduciary, thereby guaranteeing to Plan participants that the decision would be made pursuant to fiduciary obligations. Specifically, the Plan documents state that forfeitures "may be used to reduce employer contributions, to restore benefits previously forfeited, to pay Plan expenses, or for any other permitted use." ECF No. 59-1, Declaration of Deborah S. Davidson in Support of Defendant's Motion to Dismiss Plaintiff's First Amended Class Action Complaint ("Davidson Decl."), Ex. A § 11(h). As the Court has already explained, Defendant's implementation of that decision is a "decision[] of Plan administration rather than Plan design," and therefore Plaintiff adequately alleged that Defendant was acting as a fiduciary when deciding how to allocate the forfeitures. MTD Order at 8 (citing *Waller v. Blue Cross of California*, 32 F.3d 1337, 1342 (9th Cir. 1994)).

Where Plaintiff goes awry is in his implicit suggestion that "act[ing] in the best interests of the plan participants and beneficiaries," Opp. at 7 (quoting *Barker v. Am. Mobil Power Corp.*, 64 F.3d 1397, 1403 (9th Cir. 1995), *as amended* (Nov. 15, 1995)), requires "maximiz[ing] pecuniary benefits" to individual plan participants or "resolv[ing] every issue of interpretation in favor of plan beneficiaries." *Wright v. Oregon Metallurgical Corp.*, 360 F.3d 1090, 1100 (9th Cir. 2004)

6

(quoting *Collins v. Pension & Ins. Comm. of So. Cal. Rock Prods. & Ready Mixed Concrete Ass'ns*, 144 F.3d 1279, 1282 (9th Cir. 1998) (per curiam)). It does not. *Wright*, 360 F.3d at 1100. Instead, an ERISA fiduciary's duty is to ensure that all participants have received the full benefit guaranteed to them by the plan documents. Here, as Defendant points out, Plaintiff has not alleged that any Plan participant "received less than the full employer contributions" promised them under HP's Plan documents. Mot. at 6. Nor has he alleged that the administrative costs charged to him and to other Plan participants were excessive or unnecessary. Plaintiff's theory is that, in broadly stating that forfeitures could be used "to reduce employer contributions, to restore benefits previously forfeited, to pay Plan expenses, or for any other permitted use," Davidson Decl., Ex. A § 11(h), HP effectively intended to create an additional benefit: that in any year in which there were forfeitures, those forfeitures would first be used to reduce administrative expenses for individual Plan participants. This proposition is at odds with the Ninth Circuit's holding in *Wright* as well as with HP's Plan documents themselves, which state that the company retains discretion over whether to pay Plan expenses out of the Plan trust. *See* Davidson Decl., Ex. A § 17(b).

The latter point—about HP's retention of discretion—merits a clarification regarding the Court's Order on HP's first motion to dismiss. There, the Court determined that Plaintiff was attacking Defendant's *implementation* of a specific Plan term: § 11(h), which states that "[a]mounts forfeited . . . may be used to reduce employer contributions, to restore benefits previously forfeited, to pay Plan expenses, or for any other permitted use." *See* MTD Order at 8; Davidson Decl., Ex. A § 11(h). In finding that Plaintiff had adequately alleged that HP acted as a fiduciary when it implemented that Plan term, MTD Order at 8, the Court determined that HP acts as a fiduciary when it takes the concrete action of allocating forfeitures.

Importantly, however, the fiduciary allocation decision is restricted by the reservation in Plan § 17(b). In that section of the Plan, the document states that "[t]he Company shall have complete and unfettered discretion whether an expense of the Plan or Trust shall be paid by the Participating Companies or out of the Trust Fund, and this Section shall not be construed to require the Participating Companies to pay any portion of the expense of the Plan." Davidson

7

1  Decl., Ex. A § 17(b). This Plan term indicates that HP *acting as settlor* determines whether, in a
2  given year, Plan expenses will be paid by HP or charged to Plan participants' accounts. *Id.*; *see*
3  *Hughes Aircraft Co.*, 525 U.S. at 444 (explaining that decisions about "who is entitled to receive
4  Plan benefits and in what amounts" are settlor functions). Then, HP *acting as fiduciary*
5  implements the allocation of the forfeitures. *See* MTD Order at 8 (citing *Waller*, 32 F.3d at 1342).
6  Thus, HP (as fiduciary) will only use those forfeitures to pay Plan expenses if HP (as settlor)
7  decided that year that the Plan administrator should use at least some forfeitures to pay Plan
8  expenses. Plaintiff's theory would require the Court to find that the language of Plan § 11(h), in
9  combination with ERISA's general fiduciary duty provisions, overrides the language of Plan
10  § 17(b). The Court declines to do so.

11  Second, the Court agrees that Plaintiff's theory seems to ignore "decades of settled law."
12  *See* Mot. at 8. The Court has already found that Plaintiff's theory is implausible in light of the
13  long history of using forfeitures to reduce employer contributions. MTD Order at 12. As
14  previously discussed, *id.*, the Treasury Department has proposed regulations that seek to "clarify
15  that forfeitures arising in any defined contribution plan . . . may be used for one or more of the
16  following purposes, as specified in the plan: (1) to pay plan administrative expenses, (2) to reduce
17  employer contributions under the plan, or (3) to increase benefits in other participants' accounts in
18  accordance with plan terms." Use of Forfeitures in Qualified Retirement Plans, 88 Fed. Reg.
19  12282-01, 12283 (proposed Feb. 27, 2023). These clarifications are "[c]onsistent with changes
20  made by [the Tax Reform Act of 1986, Pub. L. No. 99-514, 100 Stat. 2085]," which provided
21  "uniform rules for the use of forfeitures in defined contribution plans." *Id.* Moreover, the
22  Conference Report accompanying the Tax Reform Act of 1986 indicates that the use of forfeitures
23  in defined contribution plans to "reduce future employer contributions" predated enactment of that
24  law. *Id.* (citing H.R. Rep. No. 99-841, at II-442 (1986)). Again, this authority is not binding in
25  the present litigation. *See* MTD Order at 6. The proposed regulation applies only to plan years
26  beginning on or after January 1, 2024, 88 Fed. Reg. at 12285, while Plaintiff challenges HP's use
27  of forfeitures between 2019 and 2023. However, the proposed rule helps to illustrate the difficulty
28  with Plaintiff's theory: Plaintiff effectively asserts that the general fiduciary duty provision of

8

1     ERISA abrogates these long-settled rules regarding the use of forfeitures in defined contribution
2     plans.  *See* MTD Order at 12.
3             Consistent with the Court's conclusion in its prior Order, *id.* at 10, the breadth of
4     Plaintiff's theory continues to make it implausible.  It is still true that, under Plaintiff's theory, in
5     every plausible instance where HP, as fiduciary, would be given the option between using
6     forfeited funds to pay administrative costs or reduce employer contributions, the fiduciary would
7     always be required to choose to pay administrative costs.  That result would be contrary to the
8     Plan and to ERISA.  Plaintiff seeks both to stretch the fiduciary duties of loyalty and prudence
9     beyond the law and to create benefits beyond what was promised in the Plan itself.  The Court
10    cannot agree with such a far-reaching theory, and further, Plaintiff has still not come forward with
11    any intervening changes in the law or any particularized facts justifying departure from the
12    aforementioned settled rules regarding use of forfeitures in defined contribution plans.  *See id.* at
13    12.

### B. Breach of Fiduciary Duty of Loyalty (Claim 1)

15            In this second motion to dismiss, HP again argues that Plaintiff has failed to plausibly
16    allege a breach of ERISA's duty of loyalty, because HP acted in accordance with ERISA when it
17    "used forfeitures to 'provid[e] benefits to participants.'"  Mot. at 15 (quoting 29 U.S.C.
18    § 1104(a)(1)(A)(i)).  Plaintiff responds that he has adequately alleged that "HP has a conflict of
19    interest in administering the Plan's forfeiture provision," which is sufficient to state a claim for
20    breach of ERISA's duty of loyalty.  Opp. at 11–12.
21            ERISA requires the Plan fiduciary to "discharge his duties with respect to a plan solely in
22    the interest of the participants and beneficiaries and . . . for the exclusive purpose of: (i) providing
23    benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of
24    administering the plan."  29 U.S.C. § 1104(a)(1).  These provisions set out the basic ERISA
25    fiduciary duty of loyalty.  It is true that ERISA's fiduciary duties "draw much of their content
26    from the common law of trusts," since that was "the law that governed most benefit plans before
27    ERISA's enactment."  *Varity Corp. v. Howe*, 516 U.S. 489, 496 (1996) (citing *Cent. States, Se. &*
28    *Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985) ("[R]ather than explicitly

United States District Court
Northern District of California

1  enumerating all of the powers and duties of trustees and other fiduciaries, Congress invoked the
2  common law of trusts to define the general scope of their authority and responsibility."), and H.R.
3  Rep. No. 93–533, pp. 3–5, 11–13 (1973)).

4  But the Supreme Court has noted that "[a]lthough trust law may offer a 'starting point' for analysis [of ERISA] in some situations, it must give way if it is inconsistent with 'the language of the statute, its structure, or its purposes.'" *Hughes Aircraft Co.*, 525 U.S. at 447 (quoting *Varity Corp.*, 516 U.S. at 497); *cf. Conkright v. Frommert*, 559 U.S. 506, 512 (2010) ("Because ERISA's text does not directly resolve the matter, we looked to 'principles of trust law' for guidance." (quoting *Firestone Tire & Rubber Co. v. Bruch*, 489 U.S. 101, 111 (1989))). Thus, though a common law trustee usually "wears only his fiduciary hat when he takes action to affect a beneficiary," an ERISA fiduciary "may wear different hats," including by acting as both a plan fiduciary and as the plan sponsor. *Pegram v. Herdrich*, 530 U.S. 211, 225 (2000). And, as previously discussed, "ERISA 'does not create an exclusive duty to maximize pecuniary benefits'" to individual plan participants. *Wright*, 360 F.3d at 1100 (quoting *Collins*, 144 F.3d at 1282). Instead, the fiduciary duty is fulfilled where the fiduciary ensures that participants have received their promised benefits. *See Foltz v. U.S. News & World Rep., Inc.*, 865 F.2d 364, 373 (D.C. Cir. 1989) ("Section 404 creates no exclusive duty of maximizing pecuniary benefits. Under ERISA the fiduciaries' duties are found largely in the terms of the plan itself.").

As a result, Plaintiff's argument that HP's actions "violate ERISA's loyalty requirement" is unpersuasive. Opp. at 11 (citing *Pilkington PLC v. Perelman*, 72 F.3d 1396, 1401 (9th Cir. 1995)). Plaintiff believes the allegations here—that in January of each year from 2019 until 2023, HP decided to use forfeited funds to pay "outstanding and unpaid matching contributions" for the prior year, effectively lowering the cost to HP of providing benefits under the prior-year plan, FAC ¶¶ 33–37—state a claim for breach of fiduciary of loyalty based on a conflict of interest.[1]

---

[1] The Court notes that HP's claim that it was "free as the Plan's sponsor to reduce its [future] contributions—or even eliminate them entirely," Mot. at 17, is beside the point. Under the facts alleged in the First Amended Complaint, HP was deciding whether to use forfeited funds to decrease matching contributions it *already owed* under the prior year's Plan. *E.g.*, FAC ¶ 33. HP was not free to reduce or halt those matching contributions, so HP is too hasty to the extent it tries to assert otherwise.

10

1       However, Plaintiff's cases do not establish that the existence of a possible conflict of interest

2       automatically amounts to a breach of ERISA's fiduciary duty of loyalty. To the contrary, cases

3       like *Metropolitan Life Insurance Company v. Glenn*, 554 U.S. 105 (2008), and *Burke v. Pitney*

4       *Bowes Inc. Long-Term Disability Plan*, 544 F.3d 1016 (9th Cir. 2008), illustrate how very

5       frequently *potential* conflicts of interest arise in the administration of ERISA plans. *See Wehner v.*

6       *Genentech, Inc.*, No. 20-cv-06894, 2021 WL 2417098, at *11 (N.D. Cal. June 14, 2021) (noting

7       that showing "at most the *potential* for a conflict of interest . . . without more, is not synonymous

8       with a plausible claim of fiduciary disloyalty" under ERISA). For that reason, a plaintiff seeking

9       to establish a claim of disloyalty under ERISA must provide specific facts that move the needle on

10      his claim from "speculative" to "plausible." One way that he might do so is by showing a failure

11      to fulfill the ERISA plan terms, which might permit a court to infer that the plan fiduciary engaged

12      in an improper decisionmaking process.

13      For example, in *Rodriguez v. Intuit*, No. 23-cv-05053, 2024 WL 3755367 (N.D. Cal. Aug.

14      12, 2024), the plaintiff alleged that the defendant company made certain decisions that were not

15      authorized by its ERISA plan documents, meaning that it *violated* the plan terms. *Id.* at *6. And

16      in *Pilkington PLC v. Perelman*, 72 F.3d 1396 (9th Cir. 1995), plan participants lost benefits to

17      which they were entitled, while a significant amount of plan assets reverted to the defendant

18      company. *See id.* at 1397–98. Plaintiff's case, however, presents different facts. Here, the

19      forfeitures did not "revert" back to HP; instead, they were used—as required—to "provid[e]

20      benefits to participants and their beneficiaries." 29 U.S.C. § 1104(a)(1)(A)(i). And there is no

21      allegation that Plaintiff or any Plan participant did not receive the benefits due under the Plan.

22      Moreover, where the terms of an ERISA plan comply with the law, the plan fiduciary is

23      not authorized to provide Plan participants with *more* benefits than the Plan documents set out.

24      *See Foltz*, 865 F.2d at 373 ("Under ERISA the fiduciaries' duties are found largely in the terms of

25      the plan itself."); *Wright*, 360 F.3d at 1100 ("ERISA requires fiduciaries to comply with a plan as

26      written unless it is inconsistent with ERISA."); *Fifth Third Bancorp v. Dudenhoeffer*, 573 U.S.

27      409, 421 (2014) (discussing "the statute's requirement that fiduciaries act 'in accordance with the

28      documents and instruments governing the plan insofar as such documents and instruments are

11

consistent with'" the statute (citing section 1104(a)(1)(D))).  In this case, HP's Plan documents expressly reserve "complete and unfettered discretion to determine whether an expense of the Plan or Trust shall be paid by the Participating Companies or out of the Trust Fund."  Davidson Decl., Ex. A § 17(b).  Therefore, if a Plan administrator used forfeitures to pay Plan expenses in direct contravention of HP's determination that expenses would be charged to Plan participants that year, the Plan fiduciary would be violating the Plan terms and providing Plan participants with an additional benefit that HP did not offer.  Such a deviation is not permitted where, as here, there is no allegation that the Plan itself either (1) fails to comply with ERISA, or (2) requires a fiduciary to breach its duties.  Since the First Amended Class Action Complaint indicates only that HP "complied with the Plan's lawful terms" and "provided Plaintiff[] [and other participants] with their benefits due," Plaintiff's claim that HP violated its fiduciary duty of loyalty remains implausible.  *See Wright*, 360 F.3d at 1100.

Finally, HP's allocation of forfeitures is not a "cutback" under 29 U.S.C. § 1054(g)(1).  That provision bars retroactively decreasing (via plan amendment) a participant's "accrued benefit."  *Id.*  Here, the plan is an individual account plan, so "accrued benefit" is defined as "the balance of the individual's account."  *Id.* § 1002(23)(B).  Plaintiff does not allege that the balance of Plaintiff's (or any other Plan participant's) individual account was decreased.  He alleges only that unallocated forfeiture amounts were reallocated to provide benefits to participants, thereby *increasing* the balance of individual participants' accounts.

Defendant's motion to dismiss Plaintiff's Breach of Fiduciary Duty of Loyalty claim is GRANTED.  Having already provided Plaintiff with an opportunity to amend this claim, the Court finds that a further opportunity to amend is not appropriate and would be prejudicial to Defendant.  *See Eminence Capital*, 316 F.3d at 1051–52.  Thus, Claim One is DISMISSED WITHOUT LEAVE TO AMEND.

### C.  Breach of Fiduciary Duty of Prudence (Claim 2)

HP's argument in favor of dismissal of Plaintiff's second claim in the First Amended Class Action Complaint parallels the arguments from the first motion to dismiss.  Specifically, HP says that Plaintiff's claim suggests that ERISA "effectively allows *only one* choice: use forfeitures to

12

1  increase Plaintiff's benefits" through payment of administrative costs—despite the fact that the
2  statute and the Plan both expressly permit use of forfeited amounts to reduce employer
3  contributions. Mot. at 18 (emphasis in original). HP critiques Plaintiff's new allegations that HP
4  used a flawed process in deciding how to allocate the forfeitures, *see* FAC ¶¶ 28–29, 54, as
5  conclusory and insufficient, given that Plaintiff fails to offer specific facts about HP's purportedly
6  flawed process. Mot. at 19. In response, Plaintiff explains that his allegation is that HP "utilized
7  an imprudent and flawed process" to decide how to reallocate forfeited amounts, and that it is this
8  process failure that evinces a breach of the duty of prudence. Opp. at 13 (citing FAC ¶ 54).
9  Additionally, Plaintiff argues that because facts regarding HP's decisionmaking procedures are
10 "likely within the sole control" of HP, it is sufficient to allege facts supporting an inference that
11 HP "failed to conduct an adequate inquiry." *Id.* (quoting *Gamino v. KPC Healthcare Holdings,*
12 *Inc.*, No. 20-cv-01126, 2021 WL 162643, at *3 (C.D. Cal. Jan. 15, 2021)).
13    In carrying out its obligations, an ERISA plan fiduciary must act "with the care, skill,
14 prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like
15 capacity and familiar with such matters would use in the conduct of an enterprise of a like
16 character and with like aims." 29 U.S.C. § 1104(a)(1)(B); *see Fifth Third*, 573 U.S. at 419
17 ("Section 1104(a)(1)(B) 'imposes a "prudent person" standard by which to measure fiduciaries'
18 investment decisions and disposition of assets.'" (quoting *Massachusetts Mut. Life Ins. Co. v.*
19 *Russell*, 473 U.S. 134, 143 n.10 (1985))). "[C]ategorical rule[s] [are] inconsistent with the
20 context-specific inquiry that ERISA requires." *Hughes v. Nw. Univ.*, 595 U.S. 170, 173 (2022).
21    The Court dismissed Plaintiff's original Complaint because it evinced an implausible
22 breadth and was "in tension with the Supreme Court's . . . emphasi[s] that the plausibility of
23 allegations of breach of fiduciary duty should consider the context and circumstances of the
24 fiduciary's actions." MTD Order at 10 (citing *Fifth Third*, 573 U.S. at 418–27). Plaintiff's First
25 Amended Class Action Complaint has failed to address those concerns. Although Plaintiff
26 attempts to limit the theory by superficially focusing on whether HP's annual decision regarding
27 whether to use forfeited funds to reduce its own matching contributions or pay Plan expenses used
28 a "reasoned and impartial decision-making process," FAC ¶ 54, *see id.* ¶¶ 22–24, 27–37, the

implications of Plaintiff's First Amended Complaint are unchanged. Except where a company is at risk of defaulting on its matching contribution obligations, the same categorical rule implicit in Plaintiff's initial Complaint pervades the revised pleading: forfeitures must always be used to pay Plan participants' administrative expenses before they can be allocated to reducing a company's matching contributions. Such a rule flies in the face of decades of ERISA practice. It also disregards the fact that HP's Plan provides that expenses will be charged to Plan participants unless HP decides otherwise in a given year, *see* Davidson Decl., Ex. A § 17(b), a Plan term that Plaintiff acknowledges in the First Amended Class Action Complaint, *see* FAC ¶ 20.

The problem, once again, is that the facts as alleged do not invite a plausible inference of wrongdoing on HP's part. It is true, as Plaintiff argues, that "facts detailing the investigative process are likely within the sole control of the trustee and other ERISA defendants and, consequently, 'an ERISA plaintiff alleging breach of fiduciary duty does not need to plead details to which she has no access.'" *Gamino*, 2021 WL 162643, at *3 (quoting *Allen v. GreatBanc Tr. Co.*, 835 F.3d 670, 678 (7th Cir. 2016)). But the plaintiff *does* need to plead details "support[ing] an inference that the defendant failed to conduct an adequate inquiry." *Id.* (internal alterations omitted). In this case, Plaintiff does not—and apparently cannot—allege that Plaintiff or any other Plan participant did not receive the benefits to which he was entitled under the Plan. Thus, Plaintiff fails to plausibly allege that a "proper" investigation would have led to a different outcome. Plaintiff ignores that he is only entitled to the benefits provided under the Plan and that Plan § 17(b) reserves to HP, as settlor, the decision to defray administrative costs borne by Plan participants. The Plan cannot fairly be read to delegate the decision over whether to increase benefits to the fiduciary.

Of course, in limited circumstances, "the duty of prudence trumps the instructions of a plan document," such that an ERISA fiduciary could breach its duty of prudence despite adhering precisely to the governing plan terms. *Fifth Third*, 573 U.S. at 421; *accord Rodriguez*, 2024 WL 3755367, at *7 ("[I]t is plausible that the defendants could have breached their duty of prudence even while complying with the terms of the Plan Document."). But again, plausibly alleging a failure to fulfill the duty of prudence still requires more than simply *speculating* that an ERISA

14

fiduciary might not have conducted the requisite inquiry. There must be specific facts alleged that invite the inference that the fiduciary actually engaged in imprudent conduct. In *Fifth Third*, for example, the complaint alleged that there was both public and nonpublic information that certain stock was overvalued, about which the fiduciaries knew or should have known prior to a market crash that ultimately "eliminated a large part of the retirement savings that the participants had invested." 573 U.S. at 413–14. In this case, Plaintiff has included no such specific allegations indicating a failure to make an appropriate inquiry. Where, as here, all Plan participants received all of their promised benefits and Plaintiff is unable to point to any circumstances rendering the case unique among the countless ERISA plans permitting the same use of forfeitures, the Court still simply finds Plaintiff's claim implausible.

Accordingly, the Court concludes that Plaintiff's First Amended Class Action Complaint still fails to state a plausible claim for Breach of Fiduciary Duty of Prudence, and Defendant's motion to dismiss the claim is GRANTED. For the same reason stated with regard to Claim One, *supra* section IV.B, Claim Two is DISMISSED WITHOUT LEAVE TO AMEND.

### D. Self-Dealing (Claim 3)

HP seeks dismissal of Plaintiff's third claim by arguing that Plaintiff still fails to identify a "transaction" that would bring the facts of this case within the ambit of ERISA's prohibited transaction provisions. Mot. at 20. Plaintiff responds that HP's argument improperly imports the "transaction" requirement of section 1106(a) into 1106(b), which is actually broader in scope and "proscribe[s] self-dealing *and* certain transactions by fiduciaries." Opp. at 21–22 (emphasis in original) (quoting *Int'l Bhd. of Painters and Allied Trades Union & Indus. Pension Fund v. Duval*, 925 F. Supp. 815, 825 (D.D.C. 1996)).

Plaintiff's "self-dealing" claim is based upon 29 U.S.C. § 1106(b), which states:

A fiduciary with respect to a plan shall not—

(1) deal with the assets of the plan in his own interest or for his own account,
(2) in his individual or in any other capacity act in any transaction involving the plan on behalf of a party (or represent a party) whose interests are adverse to the interests of the plan or the interests of its participants or beneficiaries, or
(3) receive any consideration for his own personal account from any party dealing with such plan in connection with a transaction involving the assets of the plan.

29 U.S.C. § 1106(b).  During the proceedings on the motion to dismiss Plaintiff's initial Complaint, the Court carefully considered the application of *Lockheed Corporation v. Spink*, 517 U.S. 882 (1996), to this subsection of the statute.  As explained in that Order, *Spink* makes clear that using plan assets to pay plan benefits is not a "transaction" under the prohibited transactions provisions of ERISA.  MTD Order at 18.  Rather, section 1106 encompasses various "commercial bargains that present a special risk of plan underfunding" or "involve uses of plan assets that are potentially harmful to the plan."  *Spink*, 517 U.S. at 893 (citing *Comm'r v. Keystone Consol. Indus., Inc.*, 508 U.S. 152, 160 (1993)).  But that type of factual scenario is not present in the allegations currently before this Court.  Here, the plan assets at issue were used to fulfill participants' benefits under the Plan, and there was no apparent risk of Plan underfunding.  In short, the Court has already determined that HP's conduct, as alleged by Plaintiff, is not a "prohibited transaction," and the Court adheres to that conclusion.

In an effort to circumvent this prior determination, which is fatal to his claim, Plaintiff now argues that the specific provision he invokes—29 U.S.C. § 1106(b)(1)—does not *require* a "transaction." Opp. at 22–24.  But as the Court stated in its previous MTD Order, *Wright v. Oregon Metallurgical Corporation*, 360 F.3d 1090 (9th Cir. 2004), expressly mentions both section 1106(a) and section 1106(b).  MTD Order at 19; 360 F.3d at 1101.  *Wright* is binding precedent applicable to this case.  Under *Wright*, it is clear that both subsections apply only where there has been a qualifying "transaction."  360 F.3d at 1100–01 ("The Supreme Court has interpreted § 1106 to prohibit fiduciaries from involving the plan and its assets in certain kinds of business deals.  Congress enacted § 1106 to bar categorically a transaction that is likely to injure the pension plan. . . .  Plaintiffs fail to identify any transaction that falls within § 1106(a)(1) or (b)." (quoting *Spink*, 517 U.S. at 888) (internal alterations omitted)).  Based on that binding authority, the Court rejects Plaintiff's argument that section 1106(b) can apply even to non-transactional "dealing" with account assets.  *See* Opp. at 22–24.  Therefore, since Plaintiff still cannot identify a "transaction" under section 1106, Plaintiff has failed to state a claim.

Defendant's motion to dismiss Claim Three is GRANTED.  For the same reason stated with regard to Claim One, *supra* section IV.B, Claim Three is DISMISSED WITHOUT LEAVE

16

TO AMEND.

V. **ORDER**

For the foregoing reasons, IT IS HEREBY ORDERED that:

1. Defendant's Motion to Dismiss Claim One (Breach of Fiduciary Duty of Loyalty) is GRANTED;
2. Defendant's Motion to Dismiss Claim Two (Breach of Fiduciary Duty of Prudence) is GRANTED;
3. Defendant's Motion to Dismiss Claim Three (Self-Dealing) is GRANTED.
4. The First Amended Class Action Complaint is DISMISSED WITHOUT LEAVE TO AMEND.

**IT IS SO ORDERED.**

Dated:  February 5, 2025

_____
BETH LABSON FREEMAN
United States District Judge